UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12135-NG

ROBERT WADE,
Petitioner

v.

BERNARD F. BRADY, Acting Superintendent, and
THOMAS F. REILLY, Attorney General,
Respondents

**Petitioner's Memorandum of Law in Support of his Opposition
to the Respondents' Motion to Dismiss the Petition for
Writ of Habeas Corpus as Time-Barred**

Procedural Background

The Respondents are correct that the Petitioner, Robert Wade, was convicted of felony

murder and aggravated rape on September 8, 1997.  On August 6, 1998, the Supreme Judicial

Court affirmed his conviction for murder and vacated the conviction for aggravated rape

underlying the first-degree murder conviction as duplicative.[1]  Allowing ninety days for time to

file a petition for writ of certiorari to the United States Supreme Court, Wade's conviction

became final on November 6, 1998.

However, the grounds upon which this Petition is based arise from the denial Wade's

Motion for a New Trial, pursuant to Mass. R. Crim. Pro. 30, and the denial of his Motion for

---

[1]      The incident occurred on October 24, 1993, and the alleged victim died of
pneumonia while in the hospital on November 13, 1993.  *See* Commonwealth v. Wade, 428 Mass.
147 (1998).  The primary issue on appeal to the Supreme Judicial Court was the instruction to the
jury on causation.

DNA testing. On April 12, 2004, a single justice of the Supreme Judicial Court denied Wade's

application pursuant to G.L. c. 278, §33E for leave to appeal. As set forth below, because Wade

argues his actual, factual innocence, this case represents an instance of "clear injustice,"

warranting equitable tolling of the statute of limitations.

<u>Argument</u>

The one year limitations period set forth in 28 U.S.C. § 2244(d)(1) is not jurisdictional

and, accordingly, can be subject to equitable tolling in appropriate cases. <u>Neverson v.

Farquharson</u>, 366 F.3d 32, 40 (1ª Cir. 2004). The "narrow safety valve" of equitable tolling is

reserved for "instances of clear injustice." <u>Brackett v. United States</u>, 270 F.3d 60, 67 (1ª Cir.

2001). Where a prisoner makes a colorable claim of "factual innocence," the miscarriage of

justice exception is implicated, and procedural defaults may be waived. *See* <u>Bousley v. United

States</u>, 523 U.S. 614, 623 (1998); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992).

Here, the Petitioner is not only claiming actual innocence, but his only request –

repeatedly denied by both the state superior court and the Supreme Judicial Court – was for DNA

testing, which testing would conclusively prove his innocence. As set forth in the Petitioner's

Memorandum, the defense theory at trial was consent. However, the Petitioner's ability to

cooperate with his defense was limited. Although found competent to stand trial after extensive

psychological testing, the Petitioner is mentally retarded and is illiterate.

Moreover, as argued in the Petitioner's Memorandum in Support of his Petition for

Habeas Corpus Relief, the Petitioner received wholly inadequate and incompetent assistance of

counsel at trial. In addition to failing to request DNA testing pre-trial, defense counsel's theory of

3

the case was wholly misguided. The alleged victim was an elderly, eighty-three year old woman who suffered from Alzheimer's disease. Alzheimer's patients sometimes present with inappropriate hypersexuality. Trial counsel's theory was that because of her hypersexuality, the alleged victim came to the Defendant and initiated the sexual encounter with him. The defense strategy was, thus, consent. Indeed, it was consent based upon the sexual aggressiveness of the victim, which was a symptom of her Alzheimer's disease. But what defense counsel inexplicably failed to understand was that if the victim had Alzheimer's disease, the victim was incapable of consent. It is common knowledge that Alzheimer patients suffer from dementia and that its principal symptomology includes significant impairment of cognitive functioning. With the jury's being told *repeatedly* by defense counsel that the alleged victim had Alzheimer's, they understood, based upon their common knowledge, that she was incompetent. They were instructed by the Court that if she were incompetent, she was incapable of consenting, and so sexual intercourse would be rape. The defense theory of the case was consent, and the Court adequately instructed the jury that if the victim were incompetent, she was unable to consent. Thus, defense counsel's trial theory was completely misguided, it "made" the Commonwealth's case, and it assured conviction of his client.

Finally, there is no inconsistency between the evidence presented at trial and the Petitioner's claims of actual innocence. In his Affidavit which accompanied the Motion for a New Trial, the Petitioner categorically denied having had sexual intercourse with the victim. The only evidence at trial was the following: that the victim was found naked in the Petitioner's bed, that a witness testified that the Petitioner stated, "She came to me," and that the Petitioner yelled at the victim, "See all the trouble you got me into." There was no direct evidence whatsoever that the

Petitioner had sexual intercourse with the victim.   Moreover, in Dr. John Daignault's

psychological evaluation of the Petitioner, prepared in anticipation of the 1997 trial and admitted

by the Commonwealth at the Motion for DNA Testing hearing, Dr. Daignault stated that the

Petitioner had said at the scene, "I could not get a hard on.... Nothing happened." He further

stated that the Petitioner had consumed three bottles of wine and eighteen beers on the day of the

incident.   These statements are completely consistent with the Petitioner's Affidavit in which he

stated that he did not have sexual intercourse with the victim and with his claim of actual, factual

innocence here.

It is beyond reproach that "[C]ourts throughout the country have found

that DNA is highly probative of guilt and innocence, and DNA testing is becoming the leading

basis upon which wrongfully convicted individuals have secured releases from convictions."

Cherrix v. Braxton, 131 F.Supp.2d 756, 766 (E.D. Va. 2000); *affirmed* In re Braxton, 258 F. 3d

250 (4th. Cir. 2001).   Indeed, in the past few years alone, post-conviction DNA testing has

resulted in the release of over sixty-five wrongly convicted individuals from prison. *See* Cynthia

Bryant, "When One Man's DNA Is Another Man's Exonerating Evidence," 33 Colum. J.L. &

Soc. Probs. 113, 117-134 (2000). *See also* National Commission on the Future of DNA

Evidence, "Convicted By Juries, Exonerated By Science: Case Studies In The Use Of DNA

Evidence To Establish Innocence After Trial."

Pre-trial, defense counsel never requested DNA evidence.  Denial here, post-conviction, of

access to evidence which would be completely exonerating represents a most egregious denial of

due process guaranteed by the Fourteenth Amendment.  It was an outrageous violation of the

Petitioner's constitutional right to exculpatory – indeed, wholly exonerating – evidence for the

trial court to deny the Petitioner's Motion for DNA Testing where the Petitioner was prepared to pay for the DNA testing himself and not rely on Commonwealth funding. This is exactly the kind of case where a procedural default should be excused because a "clear injustice" has deprived a person who is factually innocent from access to wholly exonerating evidence. Brackett v. United States, 270 F.3d 60, 67 (1st Cir. 2001). "The very nature of the writ [of habeas corpus] demands that [habeas proceedings] be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Harris v. Nelson, 394 U.S. 286, 291 (1969).


## Conclusion

For the foregoing reasons, the Petitioner respectfully requests that the Court not dismiss his Petition as time-barred.

Respectfully submitted,
Robert Wade, by his Attorney
Janet H. Pumphrey

45 Walker Street
Lenox, MA 01240
(413) 637-2777
BBO 556424

Dated: January 6, 2005

6