

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-12135-NG

ROBERT WADE,
Petitioner

v.

BERNARD F. BRADY, Acting Superintendent, and
THOMAS F. REILLY, Attorney General,
Respondents

## SUPPLEMENTAL MEMORANDUM IN SUPPORT
## OF PETITION
## FOR WRIT OF HABEAS CORPUS

## QUESTION POSED BY THE DISTRICT COURT

Whether there must be a threshold factual showing of "actual innocence" before DNA
testing can be ordered pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2254?

## ARGUMENT

I.    A Threshold Factual Showing of "Actual Innocence" Is Not Required (A) Where the
      Equitable Nature of Habeas Corpus Proceedings Allows for Waiver of Procedural Flaws,
      (B) Where It is the Result of the Very Test Itself Which Will Prove Actual Innocence, and
      (C) Where that Proof has the Scientific Potential to be Conclusive of Innocence.

The post-conviction discovery rule, Rule 6 of the Rules governing Section 2254

Proceedings in the District Courts, allows discovery with leave of court upon a showing of

reasons amounting to "good cause." Rule 6 (a), (b). "Good cause" contemplates a showing that

the requested discovery would provide a factual basis for the grant of relief on the merits of the

Petitioner's underlying challenges to his conviction and sentence. *See* Bracey v. Gramley, 520

1

U.S. 899, 908-09 (1997).

Here, the "good cause" requirement is amply satisfied because the requested discovery, DNA testing, would provide a factual basis – innocence of the rape which was the predicate felony for the felony murder conviction – for the grant of relief on the merits of the Petitioner's underlying challenges to his conviction and sentence. The newly discovered DNA evidence clearly has the scientific potential to provide conclusive proof that a constitutional error at trial "probably resulted" in conviction. Schlup v. Delo, 513 U.S. 298, 326 (1995). With the availability of post-conviction DNA testing, the possibility of actual innocence has moved from the realm of theory to the actual.

There is precedent for discovery of DNA evidence under Rule 6 where the DNA technology could demonstrate a claim of actual innocence. In Cherrix v. Braxton, 131 F.Supp.2d 756 (E.D.Va. 2001), *interlocutory appeal by Respondents dismissed* 258 F.3d 250 (4th Cir. 2001) (a copy of the District Court case is attached as Exhibit A), the District Court for the Eastern District of Virginia[1] held that the District Court had the authority to grant a habeas petitioner's request for funds for DNA testing and that discovery of the evidence was reasonably necessary for the dual purpose of supporting the habeas petitioner's claims of actual innocence and using innocence as a gateway to show that prejudice resulted from his counsel's ineffective assistance. *See infra* Section IA.

As set forth below, a threshold factual showing of "actual innocence" is not required (A)

---

[1]    In the four years since the decision in Cherrix, motions for DNA testing have been largely the province of state courts because most defendants have been able to obtain consent for testing and most states have enacted statutes that provide for testing. Massachusetts is one of the few states which does not have a post-conviction DNA testing statute.

where the equitable nature of habeas corpus proceedings allows for waiver of procedural flaws

such as the statute of limitations here, (B) where it is the result of the very test itself which will be

proof of actual innocence, and ( C) where that proof has the scientific potential to be conclusive

of innocence.

A.      The Equitable Nature of Habeas Corpus Proceedings Allows for Waiver of Procedural
        Flaws Where a Petitioner Claims Actual Innocence.

        The Supreme Court has refined the "actual innocence" doctrine in habeas proceedings to

hold that a federal court may review a procedurally defaulted habeas claim if failure to do so

would "thwart the 'ends of justice'"or work a "fundamental miscarriage of justice." Sawyer v.

Whitley, 505 U.S. 333, 357 (1992) (Blackmun, J., concurring) (*quoting* Kuhlmann v. Wilson, 477

U.S. 436, 455 (1986). Beginning in 1986, the Supreme Court approved the use of the actual

innocence doctrine as a means by which prisoners could bring procedurally barred claims.[2] Most

recently, in Schlup v. Delo, 513 U.S. 298 (1995), the Court held that a procedurally defaulted

habeas petitioner who presented a compelling claim of actual innocence so strong that a court

_____

[2]      First, in Murray v. Carrier, 477 U.S. 478 (1986), the Court held that a petitioner
was required to show cause for the procedural default and that prejudice resulted. With respect
to the issue of actual innocence, the Court stated that "[i]n appropriate cases the principles of
comity and finality that inform the concepts of cause and prejudice must yield to the imperative of
correcting a fundamental unjust incarceration." Id. at 495. In Kuhlmann v. Wilson, 477 U.S.
436, 455 (1986), the Court held that the ends of justice are to be considered in determining
whether a court should exercise discretion to consider successive habeas corpus petition, and that
the ends of justice require federal courts to entertain such a petition only where the prisoner
supplements his constitutional claim with a colorable showing of factual innocence. Under the
facts of Kuhlmann, however, the ends of justice did not require consideration of successive
petition where evidence was nearly overwhelming and a constitutional question did not raise any
question as to guilt or innocence. In Herrera v. Collina, 506 U.S. 390, 401 (1993), the Court
recognized the constitutional right to make a "truly persuasive" showing of actual innocence as a
basis for federal habeas relief and stated that an actual innocence claim is not a constitutional
claim in itself, but merely a "gateway through which a habeas petitioner must pass to have his
otherwise barred constitutional claim considered on the merits." Id. at 404.

cannot have confidence in the outcome of the trial, unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the "gateway" and argue the merits of his habeas petition. Id. at 316. The Court in Schlup reiterated that "habeas corpus is, at its core, an equitable remedy." Id. at 319.

Here, as in Schlup, the constitutional violation was denial of the Petitioner's Sixth Amendment right to effective assistance of counsel. Robert Wade's defense counsel presented a wholly misguided theory of this case which ensured the conviction of his client. The alleged victim was an elderly, eighty-three year old woman who suffered from Alzheimer's disease. Defense counsel's trial theory was that, because female Alzheimer's patients sometimes present with inappropriate hypersexuality, the alleged victim acted out her sexual aggressions by coming to the Petitioner and initiating a sexual encounter with him. Trial counsel's notes to the file were submitted with the Petitioner's Motion for a New Trial, where he wrote that the victim would "take clothes off" and that she engaged in "sexual hissing." At trial, defense counsel cross-examined the Commonwealth's witnesses in an effort to establish that the alleged victim had not only consented, but had inappropriately sought out a sexual relationship with the Petitioner because of the Alzheimer-induced hypersexuality. In his Jury Voir Dire Questions, defense counsel requested that the Court ask three questions about Alzheimer's Disease. In arguing his Motion for a Required Finding, defense counsel noted that the victim had Alzheimer's disease. And, in his closing argument, defense counsel repeated to the jury that the victim had Alzheimer's disease. However, what defense counsel inexplicably failed to understand was that if the victim had Alzheimer's disease, she was incapable of consent. The jury was amply instructed that if the victim were incompetent, she was incapable of consenting, and so sexual intercourse would be

4

rape. Where the jury was told *repeatedly* by defense counsel that the alleged victim had

Alzheimer's, they understood, based upon their common knowledge, that she was incompetent.

The defense theory of the case was consent, and the Court adequately instructed the jury that if

the victim were incompetent, she was unable to consent. Thus, defense counsel "made" the

Commonwealth's case and assured conviction of his client.

In addition, and more to the point here, trial counsel was ineffective because he failed to

request DNA testing pre-trial. DNA testing was available in 1997 and should have been ordered.

The errors of counsel were egregious in this case, and the deprivation of the Petitioner's Sixth

Amendment right to effective assistance of counsel represents the constitutional "hook" required

by Herrera v. Collins, 506 U.S. 390, 401 (1993) for application of the "actual innocence"

doctrine. Had pre-trial DNA tests been conducted, the Petitioner's innocence would have been

proven, he would not have had to stand trial, and he would not now be wrongly incarcerated for

ten years. Therefore, it is the very incompetence of trial counsel that resulted in the issue here.

Moreover, unlike the successive or abusive petitions in the line of "actual innocence" cases, here,

all the Petitioner requests is discovery.

In Cherrix v. Braxton, 131 F.Supp.2d 756 (E.D.Va. 2001), *interlocutory appeal by

Respondents dismissed* 258 F.3d 250 (4th Cir. 2001), under facts very similar to here, the District

Court determined that even if the court were to find that the petitioner could not assert an

independent claim of actual innocence under Herrera, the DNA tests were reasonably necessary to

serve as a "gateway" to allow claims that may be procedurally barred to be heard on the merit.

Id., *citing* Schlup, 513 U.S. at 327. The Petitioner in Cherrix argued that he was denied effective

assistance of counsel because, as here, his trial attorney failed to challenge 1994 DNA test results,

which results at the time of his 2001 habeas petition were technologically inferior to recent DNA testing methods and resulted in an inconclusive determination of the origin of seminal fluid. The court held that there was "good cause" pursuant to Rule 6 of the Rules Governing Section 2254 to order DNA testing where specific allegations before a court indicate a reason to believe that the petitioner may be able, if the facts are fully developed, to demonstrate that he is entitled to relief.

Here, too, the testing of the biological materials found at the scene, in particular in the crotch of the orange pants worn by the victim, was rudimentary in comparison to available technology today and did not include DNA testing at all, which was available at that time. (*See* Affidavit of Dr. Albert B. Harper attached as Exhibit B, with accompanying serology reports and trial testimony of criminologist.) Dr. Harper, after reviewing the serology reports and trial testimony, concluded that there is biological evidence of the presence of more than the victim and the Petitioner on the orange pants worn by the victim, that both the victim's and the Petitioner's blood group of H/O/secreter is shared by forty percent of the population, and that testing using current STR DNA methods will determine conclusively whether the Petitioner is the sole contributor to the biological materials found on the crotch of the orange pants of the victim.

Other circuits which have addressed this issue have held that a credible claim of actual innocence entitles a habeas petitioner to equitable tolling of the statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See* Souter v. Jones, 395 F.3d 577, 589 (6th Cir. 2005), Majoy v. Row, 293 F.3d 770 (9th Cir. 2002) (reversing and remanding to district court for determination of actual innocence); Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) (declaring in dicta that the "AEDPA's one-year statute of limitations is subject to equitable tolling ... when a prisoner is

6

actually innocent"); Lucidore v. New York State Division of Parole, 209 F.3d 107, 113 (2d Cir. 2000) ("observed without deciding" that the one-year statute of limitations imposed by AEDPA may violate the Suspension Clause if prisoner could make a strong showing of actual innocence). In the First Circuit, in Delaney v. Matesanz, 264 F.3d, 7, 8, n.2 (1st Cir. 201), the Court stated that it need not reach the question because the petitioner made no proffer of actual innocence.

In Leung v. Mazzuca, 2003 U.S. Dist. LEXIS 22495 (E.D.N.Y. 2003), the federal district court for the Eastern District of New York dismissed a petition for writ of habeas corpus as time-barred in which a petitioner sought equitable tolling of the statute of limitations and sought DNA testing as proof of his actual innocence. In Leung, however, the DNA testing would not have been exonerating because the victim was raped by as many as six different people, and the petitioner was convicted on an "acting in concert" theory, making the presence of his semen on the evidence immaterial. However, here, in contrast, the Petitioner denied at the scene that he had sexual relations with the victim; the victim stated that she did not think she had had sex with him, but "maybe;" the criminologist testified that there were body fluids from a person other than the victim and the Petitioner on a cutting from the crotch of the victim's pants; the serology report indicated that both the victim and the Petitioner were H/O secreters; forty percent of the population are H/O secreters; there was ample evidence of the Petitioner's extreme intoxication (three bottles of wine and eighteen beers); and he stated to a psychologist a few months later when he was being tested for competence to stand trial that "I could not get a hard on.... Nothing happened." This is a case in which the Court cannot have confidence in the outcome of the trial, and the Petitioner should be allowed to pass through the "gateway" and argue the merits of his habeas petition  Schlup v. Delo, 513 U.S. 298 (1995).  Moreover, even if the Court finds that the

7

facts on the existing record are not sufficient to satisfy <u>Schlup,</u> the requested DNA tests can

without question provide proof of actual innocence beyond any doubt. *See* <u>Cherrix,</u> 131

F.Supp.2d 756 (E.D.Va. 2001)

B.    <u>A Threshold Factual Showing of "Actual Innocence" is not Required in a Circumstance</u>
      <u>Where It is the Result of the Very Test Itself Which Has the Scientific Potential to Provide</u>
      <u>Conclusive Proof of Actual Innocence</u>.

The Petitioner here has asserted "actual innocence" as a grounds equitably to toll the

statute of limitations. The tautological nature of this argument is such that it is impossible for the

Court at this point to have more than the Petitioner's own assertions of innocence combined with

the scant circumstantial evidence admitted at trial against him – because it is the discovery of the

evidence itself which will be conclusive proof of innocence. In denying the Petitioner's Motion

for a New Trial, the motion judge (who was not the trial judge) found that the Petitioner's

profession of innocence was inconsistent with the Petitioner's trial theory of consent and found

the Petitioner's assertion that he did not have sex with the victim not to be not credible.

However, there was no inconsistency between the evidence presented at trial and the

Petitioner's Motion for a New Trial. In his Affidavit which accompanied the Motion for a New

Trial, the Petitioner categorically denied having had sexual intercourse with the victim. The only

evidence at trial was the following: that the victim was found naked in the Petitioner's bed, that a

witness testified that the Petitioner stated, "She came to me," and that the Petitioner yelled at the

victim, "See all the trouble you got me into." There was no direct evidence that the Petitioner

had sexual intercourse with the victim. In Dr. John Daignault's psychological evaluation of the

Petitioner, prepared in anticipation of the 1997 trial and admitted at the Motion for DNA Testing

hearing, Dr. Daignault stated that the Petitioner had said at the scene, "I could not get a hard

8

on.... Nothing happened." He further stated that the Petitioner had consumed three bottles of wine and eighteen beers on the day of the incident. These statements are completely consistent with the Petitioner's Affidavit in which he stated that he did not have sexual intercourse with the victim.

Moreover, the Petitioner's assertions of innocence now should not be considered contradictory to his attorney's trial theory of consent because, as set forth above, that trial theory was completely misguided, and it represented ineffective assistance of counsel. Moreover, the Petitioner is retarded and, although found competent to stand trial by the psychologist who evaluated him, he was only marginally capable of cooperating with his defense in any event. The Petitioner has an IQ of 72, was a special education student through the eighth grade when he dropped out of school, and he is illiterate.

And yet, even if the Petitioner's request for DNA testing now, post-conviction, were considered to be at odds with his trial attorney's theory of consent, that presumed inconsistency alone is not enough to thwart his actual innocence assertion now. In Bousley v. United States, 523 U.S. 614 (1998), a petitioner was entitled to attempt to make a showing of actual innocence in a procedurally defaulted habeas case when he had pled guilty at trial. In his habeas complaint, the petitioner argued that his guilty plea lacked a factual basis because neither the evidence nor the plea allocation showed a connection necessary for proof of his guilt. Id. at 614. Any inconsistency between the trial theory of consent and the actual innocence argument made here is wholly irrelevant, in light of Bousley which involved a guilty plea rather than a misguided trial theory.

Similarly, in Godschalk v. Montgomery County District Attorney's Office, 177 F.Supp. 2d

9

366 (E. D. Penn. 2001), a plaintiff brought at § 1983 action for access to DNA testing, and the District Court for the Eastern District of Pennsylvania held that, notwithstanding the plaintiff's confession and overwhelming evidence of guilt, "given the powerful exculpatory effect of DNA testing, confidence in the jury's finding of plaintiff's guilt at his past trial where such evidence was not considered, would be undermined." Id. In Godschalk, there were ten specific facts which were detailed in his confession which were not available to the public and which would only have been known to the perpetrator. However, subsequent DNA testing at two different laboratories confirmed that a single assailant committed both rapes, absolutely excluding Godschalk as the rapist, and he was freed after fifteen years of wrongful imprisonment. Sara Rimer, DNA Testing in Rape Cases Frees Prisoner After 15 Years, New York Times, February 15, 2002. In Godschalk, the court ordered DNA testing, despite much more overwhelming evidence of guilt than here because if "by some chance, no matter how remote, DNA testing on the biological evidence excludes plaintiff as the source of the genetic material from the victims, a jury would have to weigh this result against plaintiff's uncoerced detailed confessions to the rapes."

If the court in Bousley allowed a defendant who had pled guilty in a procedurally defaulted habeas claim to make an actual innocence showing and if the confession and overwhelming evidence of guilt in Godschalk were held not thwart access to post-conviction DNA testing of a defendant who asserted his innocence, certainly the Petitioner here, whose conviction was based wholly on inferences from circumstantial evidence, should be allowed DNA discovery to prove his claim of actual innocence. Were the Petitioner provided the opportunity for Rule 6 discovery of DNA testing -- which is all he is seeking -- his actual innocence would be proven through the very means by which he seeks the proof.

10

Finally, with respect to the Motion Judge's finding that the Petitioner's assertion that he did not have sex with the victim not to be not credible, there are numerous cases where DNA has exonerated convicted persons in light of what had appeared to be overwhelming evidence of guilt admitted at trial. *See* Watkins v. Miller, 92 F.Supp.2d 824 (D.Ind. 200) (granting writ to defendant convicted of rape/murder, as DNA excluded him from semen in victim's body, although state contended that reasonable jury could still convict based on defendant's confession to jailhouse informant, under theory that he committed murder with another man, court noted that DNA "changes the picture completely" and "conclusively disproves the only theory the state presented at trial"); Nickerson v Roe,260 F.Supp.2d 875 (D.Cal. 2003) (DNA from robbery-murder crime scene blood excluded defendant and inculpated co-defendant; while two eyewitnesses identified defendant, co-defendants swore he did not participate in crime).

Here, the evidence against the Petitioner was wholly circumstantial. And there was serology evidence which already casts grave doubt on his guilt. There was evidence of body fluids from two different people on the crotch of the victim's pants, one of whom could not have been the victim or Mr. Wade. DNA testing could resolve this troubling discrepancy. The Schlup gateway and Rule 6 provide a crucial safeguard for this small – but critical – minority of innocent persons for whom state court process failed to provide relief.

C.    A Threshold Factual Showing of "Actual Innocence" is not Required in a Circumstance where the Proof Will be Conclusive of Innocence.

DNA testing is conclusive evidence of guilt or innocence in a rape case. Advanced DNA testing is not a simple change in technology – it represents a paradigm shift in science and law enforcement. Given the high level of accuracy in DNA testing, it is likely the Petitioner would be able to meet the "extraordinarily high threshold showing set by the Court in Herrera." J.B.

Alldredge, Federal Habeas Corpus and Postconviction Claims of Actual Innocence Based on DNA Evidence, 56 SMU L. Rev. 1005, 1020 (2003). In his concurrence in Harvey v. Horan, 285 F.3d 298 (4th Cir. 2002),[3] Judge Littig commented that the scientific advances of DNA testing, particularly Short Tandem Repeat DNA testing, have rendered it literally possible to confirm guilt or innocence beyond any question whatsoever are "no ordinary developments, even for science. And neither can they be treated as ordinary developments for law, as fully understandable is the temptation to do so because of the exceedingly difficult issues that otherwise are brought forth." Id. at 305.

Legislation has been enacted both federally and by states that provide remedies through DNA testing to reduce the risk of wrongful conviction. In 2004, Congress enacted the Innocence Protection Act, which explicitly provides for DNA testing in federal crimes. Although not applicable to habeas corpus proceedings, Congress's passage of the Innocence Protection Act evidenced an acknowledgment that since the early 1990's DNA testing has become the "most reliable forensic technique for identifying criminals" and is "increasingly commonplace in pretrial investigations." Innocence Protection Act, S. 486, 107th Cong., § 101 (a)(1), (3) (2001). The legislative intent of the Innocence Protection Act in 2004 was to provide a "comprehensive package of criminal justice reforms aimed at reducing the risk that innocent persons may be executed. Most urgently, the bill would ... ensure that convicted offenders are afforded an opportunity to prove their innocence through DNA testing..." http://leahy.senate.gov/issues/ipa/index.html. 18 U.S.C. 3600 provides for post-conviction DNA testing under

---

[3]       The decision in Harvey was ultimately moot because while the case was pending, Virginia enacted post-conviction DNA testing by statute, Va. Code Ann. § 19.2-327.1 (2001).

circumstances in which a Petitioner asserts actual innocence of conviction for a federal offense.

More than thirty states have enacted post-conviction DNA testing by statute. *See, e.g.,*
N.Y. Crim. Proc. Law § 440.30(1-a) (McKinney Supp. 1999), 725 Ill. Comp. Stat. 5/116-3(a)
(West.Supp. 1998), Fla. Stat. Ann. ss 925.11, 943.4351 (West. Supp. 2001), Cal. Penal Code s
1405 (West Supp. 2002). The New York statute requires a showing that if the results of the
DNA testing had been admitted at trial, there is a "reasonable probability that the verdict would
be more favorable to the defendant." The Illinois statute provides that testing be conducted when
test results would produce "new, noncumulative evidence materially relevant to the defendant's
assertion of actual innocence." Neither the New York nor the Illinois statute sets a time limit on
bringing the motion, and both require the state to pay for testing if the defendant is indigent and
there is a reasonable basis to believe that the post-conviction testing could establish innocence.
The Massachusetts General Court has been presented with several bills proposing the availability
and procedures for post-conviction DNA testing. To date, none has been enacted.

Finally, none of the policy reasons behind restrictions on federal habeas corpus review,
such as the statute of limitations amendment, apply to post-conviction DNA testing: (1) the
presumption that a verdict is correct because the accused was found guilty by a jury of peers after
a trial conducted with full constitutional protections, (2) the need for finality, (3) the recognition
that the likelihood of more accurate determinations of guilt or innocence diminishes over time as
memories fade, witnesses disappear, and the opportunity for perjury increases, and (4) the need to
conserve judicial resources by not opening the floodgates to meritless and costly claims. J.B.
Alldredge, Federal Habeas Corpus and Postconviction Claims of Actual Innocence Based on
DNA Evidence, 56 SMU L. Rev. 1005, 1010 (2003).

13

First, (1) the presumption that verdicts are correct is contradicted by the growing number of cases vacated by exclusionary evidence resulting from DNA testing. More than 140 wrongfully convicted persons have been exonerated through post-conviction DNA testing. A Rule 6 discovery of DNA test results is merely access to evidence, and it implies nothing about the presumption of a correct verdict or the invalidity of an underlying conviction.

(2) The need for finality and the fact that the petitioner is no longer approaching the courts as one presumed innocent requires that the evidence meet an extraordinarily high threshold. Alldredge at 1010. DNA tests can establish to a virtual certainty whether a given individual did or did not commit a particular crime. One single sperm cell recovered in a rape case may exonerate or inculpate a defendant. The qualitative difference of DNA technology, compared to all other scientific evidence, overcomes the need for finality and th fact that a petitioner is no longer approaching the courts as an innocent. In Schlup v. Delo, the Court reasoned that claims of actual innocence "pose less of a threat to scarce judicial resources and to principles of finality and comity than do claims that focus solely on the erroneous imposition of the death penalty." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Moreover, with respect specifically to the statute of limitations restriction, legal commentators have suggested that "[i]n view of its draconian consequences, it is especially disturbing that the statute of limitations imposed by the AEDPA has no policy justification." L. Zheng, Actual Innocence as a Gateway Through the Statute-of-Limitations Bar on the Filing of Federal Habeas Corpus Petitions, 90 Cal.Law.Rev. 2103, 2131 (2002) (arguing that courts should recognize and apply the doctrine of actual innocence as an equitable exception to the AEDPA's statute of limitations). If the stated purpose of the AEDPA's reform provisions was "to curb the

14

abuse of the statutory writ of habeas corpus and to address the acute problems of unnecessary delay and abuse in capital cases," according to a 1995 study, only eight per cent of the dismissed federal habeas corpus petitions were on second or successive petitions, while fifty seven percent were dismissed for failure to exhaust state remedies and twelve percent on procedural default grounds. Id, *citing* Roger A. Hanson & Henry W.K. Daley, Federal Habeas Corpus Review: Challenging State Court Criminal Convictions 14 (U.S. Dep't of Justice Bureau of Justice Statistics Publ'n, Sept. 1995), *available at* http:www.ojp.usdoj.gov/bjs/abstract/fhcrcsee.htm.

With respect to the fact that the petitioner is no longer approaching the courts innocent, "the mere fact that [a defendant] has been committed under proper procedures does not deprive him of all substantive liberty interests under the Fourteenth Amendment." Youngberg v. Romeo, 457 U.S. 307, 315 (1982). *See also* Ingraham v. Wright, 430 U.S. 651, 673 (1977) (holding that convicted felon retains liberty interest in not being transferred to mental institution without due process); Foucha v. Louisiana, 504 U.S. 71, 78-79 (1992) (insanity acquitee retains liberty interest, protected by due process, in not being committed to mental institution after mental illness); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (holding that parolle has "indeterminate" liberty interest which "includes many of the core values of unqualified liberty").

(3) The third policy reason to restrict habeas corpus review – the recognition that the likelihood of more accurate determinations of guilt or innocence diminishes over time as memories fade, witnesses disappear, and the opportunity for perjury increases – is wholly inapplicable in the DNA context. "[T]he results of DNA testing not only maintain their evidentiary significance over extended periods of time, but also increase in probative value as 'technological advances and growing databases amplify the ability to identify perpetrators and

15

eliminate suspects.'" Nat'l Inst. Of Justice, Postconviction DNA Testing: Recommendations for Handling Requests 9 (1999) [hereinafter "Recommendations"], *available at*http://nicic.org/Misc/URLShell.aspx?SRC=Catalog&REFF=http://nicic.org/Library/015513&ID =015513&TYPE=PDF&URL=http://www.ncjrs.org/pdffiles1/nij/177626.pdf (last visited April 24, 2005).

(4) And the "floodgates" reason for restricting habeas corpus review is similarly nonexistent in this context. The vast majority of state have enacted post-conviction DNA testing statutes, and so resort to federal court is rare. Moreover, DNA technology is recent, and evidence in any case before the mid-1990's simply no longer exists. The set of cases in which this issue could be raised is limited both temporally and substantively because DNA evidence is not probative of most crimes. And, as the technology is more wide-spread, it is generally employed pre-trial – as it should be – thereby obviating the need for habeas corpus review.

In Schlup, the Court noted that "[o]f greater importance, the individual interest in avoiding injustice is most compelling in the context of actual innocence... Indeed concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system. That concern is reflected for example in the 'fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.'" Schlup v. Delo, 513 U.S 298, 325 (1995). In the state court's Memorandum on the Petitioner's Motion for a New Trial, the trial court (Walker, J.) commented that Judge Chin had determined that DNA testing was "not likely to exonerate the defendant." Where access to evidence such as DNA testing – which would be completely exonerating and which would be unequivocal proof of innocence – is denied, a standard of "not likely to exonerate the defendant"

16

is wholly at odds with reality and with any sense of fundamental fairness and due process. In the context of post-conviction DNA testing, which would provide absolutely conclusive proof of innocence, a habeas petitioner should be allowed Rule 6 discovery to prove his actual innocence because failure to do so would "thwart[s] the 'ends of justice'"and works a "fundamental miscarriage of justice." Sawyer v. Whitley, 505 U.S. 333, 357 (1992) (Blackmun, J., concurring) (*quoting* Kuhlmann v. Wilson, 477 U.S. 436, 455 (1986).

Should the Court not be prepared to rule on the merits of the petition for habeas corpus, at the very least, the Court should order DNA discovery to satisfy the actual innocence standard in Herrera. Alternatively, as set forth below, the Court should allow amendment of the complaint to add a count of violation of 42 U.S.C. § 1983 and to add the Plymouth County District Attorney as a party.

II      Even if this Court finds Petitioner's Habeas Corpus Claims to be Procedurally Barred, he Nonetheless has an Independent Constitutional Right of Access to Potentially Exculpatory DNA Evidence Pursuant to 42 U.S.C. § 1983 and the Due Process Clause of the 14th Amendment, Which are not Subject to the AEDPA's Time Limitation.

Contemporaneously herewith, the Petitioner is filing a Motion to Amend his Complaint to add a Count of civil rights violations pursuant to 42 U.S.C. § 1983 and to add Timothy J. Cruz, District Attorney for Plymouth County as a Defendant. This issue is properly brought under 42 U.S. C. § 1983 because it seeks for redress against the persons who, under color of state law, subject the Petitioner to the deprivation of his Constitutional rights and because the request for access to evidence for DNA testing does not "necessary imply" the invalidity of the underlying conviction.

DNA technology has the unprecedented ability to provide conclusive proof of innocence, and a small but growing number of courts have recognized a federal constitutional right of access

17

to such evidence where a state court failed to provide relieve and where state officials unreasonably refused to provide access to evidence. In <u>Harvey v. Horan</u>, Judge Luttig eloquently explained that, in his opinion, the right, post-conviction, to DNA testing – which would have the potential to prove beyond all doubt whether the requesting person committed the crime for which he was convicted and sentenced – is not a right to material, exculpatory evidence under <u>Brady</u>, nor a right of "factual innocence" under <u>Herrera</u>, nor a right to the preservation of potentially exculpatory evidence under <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988). <u>Id</u>. at 310. It is not a right of procedural due process or a typical substantive due process right. <u>Id</u>. at 311. Rather, "it is a right that legitimately draws upon the principles that underlay all of these," <u>id</u>., is "constitutionally required as a matter of fairness," <u>id</u>. at 315, and is "one that may properly be pursued under section 1983." <u>Id</u>. at 325.

Under a <u>Brady</u> analysis, a defendant has a constitutional, due process, right to any and all favorable evidence where the evidence is material. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Materiality is determined by whether there is "a reasonably probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Id</u>. A "reasonable probability" is a "[p]robability sufficient to undermine the confidence in the outcome [of the jury's decision.]" <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). In <u>Dabbs v. Vergari</u>, a New York court ordered post-conviction DNA testing on the basis of a <u>Brady</u> analysis. <u>Dabbs v. Vergari</u>, 570 N.Y.S.2d 765 (1990). The court reasoned that notwithstanding the absence of a statutory right to post-conviction discovery, a defendant has a constitutional right to be informed of exculpatory information known to the state. <u>Id</u>. *See also* <u>Godschalk v. Montgomery County District Attorney's Office</u>, 177 F.Supp. 2d 366 (E. D. Penn. 2001) (holding, under <u>Brady</u> analysis,

18

that plaintiff in § 1983 action entitled to access to DNA testing notwithstanding confession and overwhelming evidence of guilt).

Under a substantive and procedural due process analysis, the Fourteenth Amendment requires a right of access to evidence for DNA testing which could be completely exonerating. *See* Mathews v. Eldridge, 424 U.S. 319 (1976) (holding due process requires "such procedural protections as the particular situation demands"); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (holding that due process "'is flexible and calls for such procedural protections as the particular situation demands"); Albright v. Oliver, 510 U.S. 266, 273 & n.6 (1994) (holding that procedural due process and tenets of basic fairness require government to produce all potentially exculpatory evidence to ensure fair trial). "'Due Process is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961). Thus, under a Brady analysis or a due process analysis, the Petitioner is entitled to this exculpatory evidence.

Here, Mr. Wade asserts a right to post-conviction DNA testing based on the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and asserts that defendants, by denying him such testing, have deprived him of his federal constitutional rights. These allegations in Mr. Wade's complaint clearly state a claim under the literal requirements of §1983. 42 U.S.C. § 1983 "authorizes a 'suit in equity, or other proper proceeding for redress' against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" 42 U.S.C. §1983.

In Nelson v. Campbell, 541 U.S. 637 (2004), the Supreme Court emphasized that a

19

prisoner's claim for violation of constitutional rights is properly brought under 42 U.S.C. § 1093

unless it necessarily implies the invalidity of his conviction or sentence. 42 U.S.C. §1983. In

Nelson, the Court considered a §1983 challenge to the constitutionality of Alabama's proposed

"cut-down" procedure to access petitioner's veins for an upcoming lethal-injection execution.

Nelson, 124 S.Ct. at 2120. The Court of Appeals held that the prisoner's claim was the

"functional equivalent" of a successive habeas application, and thus should be subject to the

gatekeeping provisions of 28 U.S.C. §2244(b). Id. at 2122. The Supreme Court, however,

disagreed. In finding that §1983 was an appropriate vehicle for the prisoner's claim, the Supreme

Court explained that under Heck v. Humphrey, 512 U.S. 477 (1994) and its progeny, "a §1983

suit for damages that would 'necessarily imply' the invalidity of the fact of an inmate's conviction,

or 'necessarily imply' the invalidity of the length of an inmate's sentence, is not cognizable under

§1983 unless and until the inmate obtains favorable termination of a state, or federal habeas,

challenge to his conviction or sentence." Nelson, 124 S.Ct. at 2124 (*citing* Heck, 512 U.S. at 487

and Edwards v. Balisok, 520 U.S. 641, 648 (1997)). Thus, if a "plaintiff's action, even if

successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the

plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."

Ove v. Gwinn, 264 F.3d 817, 822-823 (9th Cir. 2001) (citing Heck 512 U.S. at 487) (emphasis in

original). Based on this logic, the Nelson Court found that "petitioner's challenge to the cut-down

procedure would [not] *necessarily* prevent Alabama from carrying out its execution." Id. at 2124

B25 (emphasis in original).

The Nelson Court rejected the notion that any prisoner suit somehow related to an

underlying conviction should be automatically barred by Heck. Indeed, the Court noted that it

had previously "acknowledged that an inmate could bring a challenge to the lawfulness of a search

pursuant to §1983 . . . even if the search revealed evidence used to convict the inmate at trial,

because success on the merits would not *necessarily* imply that the plaintiff's conviction was

unlawful." Id. (*citing* Heck, 512 U.S. at 487, n.7) (emphasis in original and internal quotations

omitted). The Court explained that "doctrines such as inevitable discovery, independent source,

and harmless error" prevented any court from finding that such a claim necessarily implied an

invalid conviction. Id.

The question is not what the prisoner intends as a result of a successful §1983 claim, but

whether such a claim, if successful, will "necessarily imply" an invalid conviction. *See also*

Bradley v. Pryor, 305 F.3d 1287 (11th Cir. 2002) (holding that a suit to compel the government to

produce evidence for DNA testing was properly brought pursuant to 42 U.S.C. § 1983 because

the request for the production of evidence neither directly, nor by necessary implication, attacks

the validity of the conviction and sentence). In other words, the inquiry is an objective one, and

considers only the unavoidable and guaranteed outcome of judgment in favor of the §1983

plaintiff. Objectively, the only necessary implication of Mr. Wade's success in this action would

be to release the biological evidence at issue for DNA testing. That is the only relief requested,

and the only relief that the district court could order. What does or does not happen after the

order is granted and judgment is entered is moot for purposes of the Heck inquiry. Even if the

results are exculpatory, Mr. Wade will not necessarily be released from prison. He will still have

to file a motion under applicable Massachusetts law seeking post-conviction relief, which under

state law may or may not be granted.

Release of biological evidence will simply give Mr. Mr. Wade the *opportunity* to subject

the relevant evidence to DNA testing. Allowing Mr. Wade access to the evidence will in no way

*guarantee* any particular result and it does not independently implicate his sentence or conviction.

If Mr. Wade is permitted to pay for DNA testing, this testing could fail to produce meaningful

results, or it could produce inculpatory results, or it could produce exculpatory results. "That

these scientific possibilities exist, in and of itself, suffices to establish that the asserted right of

mere access is not a direct, or for that matter even an indirect, attack on one's conviction or

sentence." Harvey v. Horan, 285 F.3d 298, 308 (4th Cir. 2002) (Luttig, J. concurring in part and

concurring in the judgment).

## CONCLUSION

For the foregoing reasons, Robert Wade requests that this Court allow post-conviction

discovery of DNA testing pursuant to Rule 6, and grant his petition for habeas corpus relief. In

the alternative, Mr. Wade requests that the Court allow his Motion to Amend his Complaint to

add a count under 42 U.S.C. 1983 and to add the Plymouth County District Attorney as a party,

and to order state officials to release DNA evidence for testing.

                                        Respectfully submitted,
                                        Robert Wade, by his Attorney
                                        Janet H. Pumphrey, Esq.

                                        45 Walker Street
                                        Lenox, MA 01240
                                        (413) 637-2777
                                        BBO 556424

Of counsel:
Barry Scheck, Esq.
Nina Morrison, Esq.
The Innocence Project
100 Fifth Avenue, 3d Floor
New York, NY 10011
(212) 364-5357

22