evidence. Petitioners in their petition for writ of mandamus cite *Jackson v. Vasquez* for the proposition than § 848(q) does nor empower a district court to compel action from a state official. 1 F.3d 885, 888 (9th Cir.1993). However, as explained in Cherrix's Opposition to the Application for Emergency Stay, *Jackson* was limited to its facts: (1) the district court's order had been issued *ex parte*, and (2) the order was issued prior to the filing of a federal habeas petition. (Opp'n to Application for Emergency Stay at 13-14.) The *Jackson* court explicitly stated that it was nor ruling on whether a district court is empowered to issue an order compelling a state official to act. See *Jackson*, 1 F.3d at 889. Furthermore, in arguing that this Court acted improperly under § 848(q) in ordering the Attorney General and the Clerk to retain and produce evidence, Petitioners disregard the fact that the Court is granted the authority to order Petitioners to retain and make accessible evidence via other statutes and federal case law.

The Supreme Court has held for many years that a federal district court sitting in habeas corpus has the power to compel production of complete state records. See *Townsend v. Sain*, 372 U.S. 293, 319, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *superseded by statute on other grounds* (see *Joyner v. King*, 786 F.2d 1317, 1321, 1322 (5th Cir.1986) (stating that § 2254 was amended to codify the ruling in *Townsend* regarding granting of evidentiary hearings in habeas cases)), *also overruled on other grounds* (concerning when an evidentiary hearing is mandatory in a habeas case). Moreover, such power is implicit in 28 U.S.C. § 2254(f). See 28 U.S.C. § 2254(f). Section 2254(f) provides that the official records *779 of the state court, "duly certified by the clerk of such court," shall be admissible in the federal court habeas proceeding. See *id*. Therefore, if the federal court seeks to review the state court's records, the federal court would have the authority to compel the state court, and the clerk of the court specifically, to provide those records. Thus, this Court has the statutory authority to order the Attorney General and the Clerk of the trial court to produce evidence collected in connection with state court proceedings.

The cases of *In re Warden, Kentucky State Penitentiary v. Gall*, 865 F.2d 786, *Toney v. Gammon*, 79 F.3d 693, *Tyler v. Purkett*, No. 00-1432-WMKC (8th Cir. June 21, 2000) (en banc), and *Jenkins v. Scully*, 1992 WL 32342, are also instructive on the Court's authority. *Gall* is a case very similar to this one in several respects. Like the instant case, the Court of Appeals in *Gall* was called upon to consider a writ of mandamus. See *Gall*, 865 F.2d at 786. Like Cherrix, Gall was sentenced to death and Gall's execution was stayed just short of his execution, pending the resolution of a petition for habeas corpus. See *id*. at 787. In conjunction with Gall's habeas petition, the district court granted Gall's motion that the warden provide the entire trial record and its accompanying exhibits. See *id*. To accompany the record, the court also ordered that the Kentucky State Police Crime Lab provide Gall with hair samples and dry-mount microscope slides for "examination by petitioner's experts, with appropriate safeguards." *Id*. Notably, the testing ordered by the district court in *Gall* was a retesting of evidence previously tested by the state for the trial. This is yet another similarity to the instant case.

The warden in *Gall* petitioned the Sixth Circuit to rescind the order providing Gall with physical evidence for retesting. See *id*. The Sixth Circuit held that the district court had not abused its discretion in ordering the provision of physical evidence to the habeas petitioner for laboratory analysis. See *id*. at 788-89. The Sixth Circuit so held, even though the provision of evidence in *Gall* entailed the removal of evidence from Kentucky to Texas. See *id*. at 788. Cherrix requests the provision of evidence that is in the custody of individuals in this state, and the parties may select a qualified laboratory outside of this state to conduct the requested DNA testing. The breadth of the discretion granted the district court in *Gall* illustrates that this Court did not exceed its discretion in ordering Petitioners to retain and provide the evidence Cherrix has requested.

In another court of appeals case sharing similarities with this case, the Eight Circuit held that a habeas petitioner was entitled to discovery of a state's evidence to conduct scientific testing. See *Toney*, 79 F.3d at 693. In *Toney*, habeas petitioner Toney had been convicted of rape and sodomy. Toney claimed ineffective assistance of counsel and raised constitutional claims before the district court on habeas review. See *id*. at 696. Toney maintained his innocence, and argued that his counsel had been ineffective in failing to have the semen of the assailant blood-typed, which he claims would have excluded him as a suspect. See *id*. at 697. Given the dissimilarities between the witnesses' description of the assailant and Toney's physical characteristics, Toney argued that his counsel should have developed a defense of mistaken identity. The Eighth Circuit concluded that, given the nature of Toney's allegations, he had

shown good cause for discovery under Rule 6. *See id.* at 700 (finding that it had been an abuse of discretion to deny Toney discovery). The court held that discovery for Toney was "indispensable to a fair, rounded, development of the material facts." *Id.* Similarly, this Court has found that the outcome of a DNA test could exclude Cherrix as a suspect. Therefore, Cherrix demonstrated good cause for discovery of evidence held by state officials under Rule 6. *See* RULES GOVERNING § 2254 CASES, Rule 6(a).

*780 In addressing Toney's attempts to develop his habeas case, Toney asserted that the DNA and other scientific testing that he requested could exclude him as a suspect and were not available at the time of trial. *See Toney,* 79 F.3d at 700. Toney further asserted than he had not been able to obtain samples from the State in order to perform any kind of testing: blood-typing or DNA fingerprinting. *See id.* The State acknowledged that the exhibits from Toney's criminal trial remained in the custody of the County authorities, but the State refused the court's request to voluntarily make the exhibits available to Toney's counsel. *See id.* The Eighth Circuit held that Toney was "*entitled* no have *access* to [the] evidence through *discovery*." *Id.* (emphasis added). The Eighth Circuit remanded so that the district court could grant discovery and order the state to give Toney access to the forensic evidence. *See id.* at 700-01. The parallels between the Eighth Circuit's holding and this Court's January 9 Order ratify the authority this Court exercised in its January 9 Order. Like the *Toney* court, this Court recognized the need to order the state to preserve evidence so that Cherrix could be granted "*access* to evidence." (Jan. 9 Order an 1 (emphasis added); *see also id.* at 3 (ordering evidence protection to preserve Cherrix's right to "seek access to forensic evidence").) Furthermore, this Court, like the *Toney* court, acted pursuant to its power to grant discovery, not pursuant to § 848(q). (Id. at 2.)

*Jenkins v. Scully* provides further support that this Court acted within its authority in ordering the Attorney General and the Clerk to provide Cherrix with evidence for DNA testing. 1992 WL 32342. *Jenkins* involved a § 2254 habeas petitioner's motion that the court direct the county district attorney to produce hair samples so that they could be subjected to DNA fingerprinting tests at an appropriate facility. *See id.* at *1. The District Court for the Western District of New York held that the habeas petitioner was entitled to the opportunity to resort to the DNA tests. *See id.* The *Jenkins* court found that "tangible things [could] be subpoenaed from a non-party for inspection and testing" pursuant to Rules 34(c) and 45, and the court's discretion. *Id.* at *2 (citing 28 U.S.C. § 2254; Fed.R.Civ.P. 34(c), 45).

Another case, *Tyler v. Purkett*, involved an appeal, not a habeas. No. 00-1432-WMKC (8th Cir. June 23, 2000). Nevertheless, *Tyler* demonstrates that district courts are given wide authority to order parties to act so as to uphold a defendant's constitutional rights. Defendant-Appellant Tyler moved the appellate court to compel the State to produce any existing semen and hair samples for DNA testing. The Eighth Circuit, sitting en banc, ordered the district court "to take such action" as would ensure that the DNA testing of any existing samples would be conducted. *Tyler,* No. 00-1432-WMKC. The Eighth Circuit did not indicate any limitation on the district court's powers to ensure DNA testing of evidence in the custody or control of state officials.

Further evidence that it is firmly established that federal district courts have the authority to order state officials to produce documents and evidence is found in orders issued by other judicial officers of the Eastern District of Virginia. Less than two months preceding the date of this Opinion, Judge James C. Cacheris ordered the Clerk of the Circuit Court of Loudon County, Virginia to produce the official court record of a habeas petitioner's state court proceedings. *See Hervin v. Angelone,* No. 00-1630-A (E.D.Va. Jan. 24, 2001). Judge Cacheris sought the state court records to determine the viability of the arguments raised in Herbin's habeas corpus petition. Also, in September of last year, Judge Albert V. Bryan, Jr. held that a convicted defendant stated a claim for violations of his constitutional rights in arguing that the Commonwealth Attorney for Fairfax County, Virginia should have searched for and provided the defendant *781 with evidence for DNA testing. *See Harvey v. Horan,* 119 F.Supp.2d 581 (E.D.Va.2000). Although not a habeas case, the convicted defendant in *Harvey* raised in his 42 U.S.C. § 1983 action claims very similar to those raised in this and other habeas corpus actions. Judge Bryan noted the similarities; Harvey's claim was distinguishable from a habeas corpus petition only because: (1) Harvey did not necessarily seek to invalidate his conviction, and (2) Harvey did not seek immediate or more speedy release from prison. *See Harvey,* 119 F.Supp.2d at 583-84. Harvey based his § 1983 action on the contention that the Commonwealth Attorney's refusal to locate and provide two swab samples, and the

mouth, vaginal, and thigh smears from his rape case deprived Harvey of the ability to prove his innocence for a pardon board or a clemency proceeding. *See id.* at 582. Analogously, Cherrix argues that DNA tests could prove his innocence for a habeas corpus proceeding. Moreover, as in *Harvey*, the information Cherrix seeks for DNA testing is in the possession or control of state officials.

*Harvey* also provides support for another aspect of this Court's January 9 Order: the instruction that the Attorney General take steps to preserve evidence in the care, custody, and control of state government officials. (Jan. 9 Order at 7.) The fact that Harvey legitimately claimed violation of his constitutional rights based on the Commonwealth Attorney's inability, or unwillingness, to locate evidence for Harvey no analyze illustrates the authority of the federal court to order state officials to retain and preserve evidence.

### 3. The Court's Authority to Order the Retention of Evidence

This Court had a well-founded concern motivating it to order the Attorney General to ensure the preservation of evidence in this case. In support of his Motion for the Retention and Preservation of Evidence, Cherrix presented evidence to this Court that some state or local officials have retention policies that allow them to destroy evidence. (Supp. to Pet.'s Mot. for Retention and Preservation of Evid., Ex. 3: *Smith v. Murray*, No. 3:93CV710 (E.D.Va., Richmond Division), Resp't Answer to Pl.'s Interrog.) Dr. Frances P. Field, Assistant Chief Medical Examiner for the Commonwealth of Virginia, has sworn that tissue samples in his custody "were routinely destroyed" pursuant to his office's regular policy. (*Id.*) Dr. Field further stated that it was the Commonwealth Attorney, or one of his assistants, who called to authorize the destruction of the evidence. (*Id.* at Ex. 2: *Smith v. Murray*, No. 3:93CV710 (E.D.Va., Richmond Division), Resp't Supp. Answers to Pet.'s Interrogs.) Upon consideration of this information, this Court requested than the Attorney General agree to retain the evidence pertinent to this case and direct others not to destroy it. The Attorney General stated that she could not assure the Court that state agencies would not destroy the evidence. *See Cherrix v. Taylor*, Transcript of Telephonic Conference on Motion for DNA Testing and Motion for Retention and Preservation of Evidence, No. 00-1377- AM (E.D.Va. Dec. 20, 2000). This Court acted in its January 9 Order to ensure that what occurred in *Smith v. Murray* would not occur here. The Court acted to ensure that habeas petitioner Cherrix would have access to evidence to develop his case.

Notwithstanding the Commonwealth's history of destroying evidence, Petitioners argue that the Court did not have the authority to order Petitioners to preserve evidence held by state officials. (Pet. for Writ of Mandamus at 10- 11.) Federal law discredits Petitioners' argument. In the United States Supreme Court case *Arizona v. Youngblood*, a defendant argued post-conviction that the police's failure to preserve physical evidence violated his Due Process rights under the Fourteenth Amendment. 488 U.S. at 52, 109 S.Ct. 333. Youngblood argued that the police's failure to refrigerate the victim's clothing, and to have a physician examine samples *782 close to the time the samples were taken, denied him evidence material to his defense. *See id.* at 54, 109 S.Ct. 333. The *Youngblood* Court considered "what might loosely be called the area of constitutionally guaranteed access no evidence." *Id.* The Supreme Court concluded that one's Due Process rights are violated if evidence is destroyed and the officials in possession of that evidence knew of the potentially exculpatory value of the evidence. [FN16] *See id.* at 56, 58, 109 S.Ct. 333. Here, Petitioners are aware of Cherrix's assertion that the evidence held by state officials is exculpatory. Therefore, once good cause was shown for discovery, it was appropriate for the Court to protect Cherrix's right to access the evidence. *See* RULES GOVERNING § 2254 CASES, Rule 6(a) (permitting habeas petitioners use of Federal Rules of Civil Procedure within discretion of court and for good cause shown); Fed.R.Civ.P. 26(b)(1) (permitting discovery regarding the existence, description, and nature of tangible things); Fed.R.Civ.P. 34(a) (permitting discovery of documents and things, and the copying, testing, or sampling of tangible things).

> FN16. The *Youngblood* Court ultimately held that Youngblood had not demonstrated that the state police knew of the exculpatory value of the evidence when they failed to preserve the evidence. *See Youngblood*, 488 U.S. at 58, 109 S.Ct. 333. The Court held, therefore, that there had been no violation of Youngblood's Due Process rights. *See Id.*

The United States Supreme Court has held that it is not error, and, in fact, is appropriate for a federal

court to order a state official to retain, preserve, or protect tangible things. *See United States v. Shipp, 203 U.S. at 573, 27 S.Ct. 165* ("*Shipp I* "); *United States v. Shipp, 214 U.S. 386, 410, 29 S.Ct. 637, 53 L.Ed. 1041 (1909)* ("*Shipp II* "). The *Shipp* case involved a charge of contempt of court lodged against a Tennessee county sheriff. The sheriff failed to protect and preserve a "body" in contravention of federal court orders. The Supreme Court held that the federal courts had the authority to issue the retention orders, and that the sheriff was guilty of contempt. *See Shipp II, 214 U.S. at 423, 425, 29 S.Ct. 637* (holding Sheriff Shipp in contempt for aiding and abetting a mob in killing a prisoner ordered into Shipp's protective care).

In the *Shipp* case, a black man, Mr. Ed Johnson, had been convicted of the rape of a white woman. *See Shipp I, 203 U.S. at 571, 27 S.Ct. 165*. Johnson filed a petition for a writ of habeas corpus to the United States circuit court. *See id.* The circuit court denied the writ, but remanded Johnson to Hamilton County for ten days no enable Johnson to bring an appeal. Upon appeal of this directive, the Supreme Court of the United States issued a similar order for Johnson's detention, and further ordered the sheriff to retain custody of Johnson pending the appeal. *See id.* There was a great deal of public outrage in the area an the rape of a white woman by a black man, and the sheriff was informed that a mob would attempt to murder the prisoner. *See id.* at 572, 27 S.Ct. 165. A mob had already attempted to remove Johnson from the jail on the night Johnson was arrested for the rape. *See Shipp II, 214 U.S. at 415, 29 S.Ct. 637*. In ordering the sheriff to retain Johnson, the Court was ordering the sheriff to protect Johnson from harm. *See id.* at 420, 29 S.Ct. 637 (finding that Shipp defied the court's order by failing to prepare for the mob, making it easy for the mob to lynch Johnson, and by failing to "help in the slightest degree to protect Johnson"). Like in the Cherrix case, the individual in Shipp to whom the Supreme Court issued the preservation order was not a named "party" to the case.

This Court acted under the same authority in its January 9 Order as that articulated in *Shipp*. *See Shipp I, 203 U.S. at 573, 27 S.Ct. 165; Shipp II, 214 U.S. at 419-20, 29 S.Ct. 637*. The Supreme Court held in *Shipp I* that a federal court "[has] the authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject *783 of [a habeas] petition" until the federal court can rule on issues regarding the petition. *See Shipp I, 203 U.S. at 573, 27 S.Ct. 165* (stating that court could act to preserve conditions until judgment on jurisdiction could be announced). The Court noted in *Shipp I* that an order issued by a court having no jurisdiction to issue the order may be disregarded without liability. *See id.* (citations omitted). The Supreme Court held that the sheriff could be held in contempt of court because the federal court *did* have the authority to order the sheriff to retain and protect the body of Johnson. *See id.* Analogously, this Court had the authority to order the Attorney General for the Commonwealth to ensure the preservation of the forensic evidence in this case so as "to preserve the existing conditions and the subject of [Cherrix's] petition." *Id.*

Furthermore, this Court had the authority to issue a preservation order, regardless of whether ultimately the DNA nesting is inconclusive, or the Court determines that Cherrix's petition does not have merit. *See id.* The *Shipp I* Court stated that there is no exception to the court's authority to preserve existing conditions if the final judgment is that the writ of habeas corpus should not have issued or that the appeal should be dismissed. *See id.*

This Circuit has accepted a district court's authority to enter a preservation order. In the products liability case of *Cole v. Keller Industries, Inc.,* District Judge James R. Spencer issued a "non-destruct" order to prevent further destruction of evidence. 872 F.Supp. 1470, 1472 (E.D.Va.1994). Judge Spencer ultimately granted a motion by defendant for summary judgment, grounded, in part, on spoilation of evidence. Judge Spencer held that "preservation of the allegedly defective product is of 'utmost importance' in defending against a product liability suit." *Id.* at 1473. Spencer held that the failure to preserve the evidence prejudiced the defendant. *See id.* The Fourth Circuit reversed Judge Spencer's grant of summary judgment, holding that, absent a showing of bad faith, dismissal on the grounds of spoilation of evidence was not authorized. *See Cole v. Keller Industries, Inc., 132 F.3d 1044, 1047 (4th Cir.1998)* (citing *Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 155-57 (4th Cir.1995); Berthold-Jennings Lumber Co. v. St. Louis, I.M. S. R. Co., 80 F.2d 32, 41-42 (8th Cir.1935); Gentry v. Toyota Motor Corp., 252 Va. 30, 471 S.E.2d 485 (1996)*). However, in its careful and thorough analysis of the law and the district court proceedings, the Fourth Circuit did not hold that Judge Spencer acted outside of

his authority to issue an order to prevent the further destruction of evidence. *See generally id.*

District court cases outside of this Circuit also illustrate the Court's authority to order the preservation of evidence. In *Perry v. Saint Francis Hospital and Medical Center*, the Kansas district court enjoined the American National Red Cross from distributing or destroying bone tissue processed from the bones of a decedent. 1994 WL 191913 (D.Kan. April 20, 1994). The plaintiffs in *Perry* were the decedent's wife and children, and they wished to prevent the Red Cross from distributing the bone tissue to individuals awaiting bone marrow donations. *See id.; Perry v. Saint Francis Hosp. and Med. Ctr.*, 865 F.Supp. 724, 724-25 (D.Kan.1994). Plaintiffs argued that the bone matter would be evidence at trial, and that they would ask that the bone matter be returned if they prevailed. Similarly, in the Louisiana case of *Andrew Martin Marine Corp. v. Stork-Werkspoor Diesel B.V.*, the defendant sought a protective order to prevent plaintiff's destruction of evidence through metallurgical tests. 480 F.Supp. 1270, 1280 (E.D.La.1979) (making reference to the defendant's motion). The district court granted the order. *See id.* (referencing the success of defendant's motion). Like the courts' orders in *Perry* and *Andrew Martin Marine* which were issued to enable the moving parties to have evidence *784 available for trial, this Court ordered the Attorney General to ensure the preservation of the evidence in this case so Cherrix could use the evidence in conjunction with his habeas petition. Notably, both *Perry* and *Andrew Martin Marine Corp.* involved preservation orders issued to parties in civil actions. Nevertheless, these cases demonstrate the Court's power to issue orders to prevent the destruction of pertinent evidence.

### C. Overlap of State and Federal Realms

[15][16] Petitioners argue that this Court has overstepped its bounds in ordering state officials to preserve evidence and by granting Cherrix access to evidence. (Pet. for Writ of Mandamus at 14.) Petitioners argue that a federal court should not defeat the interests of finality and invade a state's "sovereign power to enforce the criminal law" through federal habeas review. (*Id.* (citations omitted).) Petitioners' argument that this Court has improperly invaded the realm of the Commonwealth ignores the fact that the provision of federal habeas review is premised on the notion that the federal court will venture into the state's realm, to determine whether there has been a violation of a habeas petitioner's constitutional rights. *See Jackson v. Virginia*, 443 U.S. 307, 322-23, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The sovereignty and independence of the state realm should be respected. However, the finality of an action taken in the state realm is not to be protected to the exclusion of the vindication of one's constitutional rights, especially when the penalty is death.

[17] The United States Supreme Court has noted that "the problems of finality and federal-state comity arise whenever a state prisoner invokes the jurisdiction of a federal court to redress an alleged constitutional violation." *Id.* at 322, 99 S.Ct. 2781. However, federal courts step in where state courts can no longer provide a remedy. *See id.* State appellate review serves in the vast majority of cases to vindicate failures in due process protection, but it is the occasional lapse of the state court that the federal writ of habeas corpus stands ready to correct. *See id.* (citing *Brown v. Allen*, 344 U.S. 443, 498-501, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.)).

Like Petitioners in this case, the respondents in *Jackson v. Virginia* argued that the federal court should be foreclosed from further inquiry into aspects of a habeas petitioner's case if the petitioner, convicted in a state court, has been given a "full and fair hearing" in the state system. The Supreme Court in Jackson acknowledged that any judgment by a state court affirming a criminal conviction is entitled to deference by the federal courts. *See id.* at 323, 99 S.Ct. 2781. However, the Jackson Court pointed out that "Congress in § 2254 selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law." *Id.* The federal habeas corpus statute presumes the norm of a fair trial in state court, but does not presume that the state proceedings will always be without error. *See id.* Although the notion of "finality" is important, such finality is not desirable when the result is the "finality" of the deprivation of liberty at the expense of a constitutional right. *See id.* Therefore, this Court, by statute, has the duty to examine actions taken by the Commonwealth to make sure that the final result obtained is one in keeping with Cherrix's constitutional rights.

The observations of the Supreme Court in *Jackson* and the Supreme Court's own orders demonstrate that the sovereignty of the Commonwealth is not absolute. As noted above in the description of the *Shipp* case, the Supreme Court itself has issued orders directed at state officials in order "to preserve the existing conditions and the subject of [habeas petitions]." *Shipp I*, 203 U.S. at 573, 27 S.Ct. 165. In *Shipp*, the Supreme Court ordered a county sheriff to retain and protect the body of Johnson, *785 a habeas petitioner and appellant. When the sheriff disregarded the Court's order, the Supreme Court held the sheriff in contempt of court. *See Shipp II*, 214 U.S. at 420-21, 425, 29 S.Ct. 637.

In the mandates of its January 9, 2001 Order, this Court exercised the responsibility that Congress has entrusted to the federal courts to "determin[e] whether state convictions have been secured in accord with federal constitutional law." *See Jackson*, 443 U.S. at 323, 99 S.Ct. 2781. The importance of the federal writ of habeas corpus is highlighted in the plain text of the United States Constitution: "The privilege of the writ of habeas corpus shall not be suspended;" therefore, the federal courts must act appropriately to sustain the integrity of the writ. *See* U.S. CONST. art. I, § 9, cl. 2. Accordingly, where a state's proceedings fail to uphold individuals' constitutional rights, it is appropriate for the federal system to act to safeguard these rights. *See* U.S. Const. art III. § 2 ("The judicial power shall extend to all cases, in law and equity, arising under this Constitution [and] the laws of the United States....").

### D. Inappropriateness of Mandamus Relief

[18][19] Although this Court has dedicated substantial space to provide clarification of its January 9, 2001 Order, it is important to note that the Warden, Attorney General, and Clerk's Petition is not properly before the Fourth Circuit. Neither mandamus nor prohibitive relief are appropriate in this case. Courts should resort to the remedy of a writ of mandamus or prohibition only in extraordinary circumstances. *See Gall*, 865 F.2d at 788 (stating that courts should "hardly ever!" use mandamus). "Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). Congress intended that appellate review of a district court's order should be postponed until after the court has rendered its final judgment. *See id.* (citations omitted). In order to ensure that the writ will issue only in extraordinary circumstances, the Supreme Court has required that the party seeking the writ demonstrate two things: (1) that it has exhausted its other means to achieve the remedy it desires, and (2) that the party's right to the writ is "clear and indisputable." *See id.*; *see also McDaniel v. United States District Court for the District of Nevada*, 127 F.3d 886, 888 (9th Cir.1997). The Petitioners' request for a writ is not appropriate here because they have not sought other means, such as direct appeal, to attain the relief they desire, and they have not demonstrated that they have a clear right to the issuance of the writ. *See id.*

It is clear from the face of Petitioners' Petition that they did nor seek alternative remedies before seeking their writ. The Petition is entitled "Petition for a Writ of Mandamus and/or Prohibition *and Appeal from Order Granting Injunction.*" (Pet. for Writ of Mandamus (emphasis added).) Petitioners have submitted their appeal in combination with their petition for a writ of mandamus or prohibition. Therefore, it is clear that Petitioners did not first seek to appeal this Court's January 9, 2001 Order. Consequently, the issuance of a writ of mandamus and/or prohibition is not appropriate an this time.

[20] Furthermore, Petitioners cannot demonstrate that they have a clear and indisputable right to the issuance of a writ. *See Allied Chemical Corp.*, 449 U.S. at 35, 101 S.Ct. 188; *Gall*, 865 F.2d at 788-89. First, this Court did not clearly err as a matter of law in ordering the disbursal of funds for DNA testing and ordering that Petitioners retain the forensic evidence to provide Cherrix the opportunity to access the evidence. *See infra* section V.B. As has been demonstrated in detail, this Court possesses the authority to order the disbursal of funds for Cherrix's requested DNA testing under 21 U.S.C. § 848(q), and the authority to provide for Cherrix's access to the existing physical evidence under the rules and law governing discovery. *786 Where, as here, a court acts well within its discretion in ordering discovery, there is no clear error as a matter of law. *See McDaniel*, 127 F.3d at 888 (holding that the district court did not err as a matter of law in issuing a discovery order because a death row habeas petitioner had shown good cause for seeking discovery). In a case similar to this one, where the district court ordered that a capital habeas petitioner be allowed to remove evidentiary evidence from Kentucky to Texas for

testing, the Sixth Circuit Court of Appeals held that the party seeking a writ of mandamus had not demonstrated that the district court's order "was even an abuse of discretion." See *Gall*, 865 F.2d at 788. Therefore, there was "certainly" no showing that the mandamus petitioner's right to relief from the order was clear and disputable. See *id.* Accordingly, Petitioners in this case do not have a right to the issuance of a writ of mandamus, because this Court has not abused its discretion.

Furthermore, this Court did not act outside of its authority in providing for Cherrix's access to evidence and for DNA testing funds, even if this Court ultimately finds the DNA results inadmissible. In *Gall*, the Sixth Circuit recognized that the district court had "merely" ordered that the capital habeas petitioner could utilize avenues of discovery; in so doing, the district court had not held that the information obtained through discovery would be admissible. See *id.* at 789 (regarding order that a deposition be taken). The *Gall* court held that "the discretionary act of ordering [discovery] which may yield inadmissible testimony [did not rise] to the level of a judicial usurpation of power warranting the extraordinary relief of mandamus." *Id.* Similarly, in ordering the disbursal of funds for DNA testing, this Court has not made a judgment as to the merits of the habeas petition; that judgment remains for another day. In the event that this Court ultimately determines that the DNA test results are inadmissible, ordering the disbursal of funds for the testing still does not warrant the relief of mandamus. See *id.*

## VI. CONCLUSION

Upon review of the actions that this Court undertook in its January 9, 2001 Order, it is important to emphasize that this Court respects the judgments of the Accomack Circuit Court jury and the Virginia Supreme Court. This Court was called upon to make a judgment about the reasonable necessity of DNA testing services to a condemned habeas petitioner's case. This Court made no proclamation or judgment about Cherrix's claims of innocence. [FN17] The January 9 Order was not premised on the presumption that the jury wrongly convicted Cherrix. The Court's order granting funds for DNA testing services and providing for the preservation of evidence was grounded in the fact that the habeas petition raises disturbing questions regarding the constitutionality of Cherrix's trial proceedings that are heretofore unanswered.

> FN17. The Court recognizes that claims of innocence by convicted prisoners are common; however, this petition presents a meritorious case for careful consideration.

Inexplicably, the Commonwealth has refused to conduct the DNA tests which could clarify whether Cherrix's constitutional rights have been violated through his conviction and sentence. This Court had the authority to act, despite the Commonwealth's disinterest in addressing the real questions raised by Cherrix's habeas petition. Virginia's recent experience with Earl Washington and others [FN18] requires the Court to give deliberate reflection upon Cherrix's request. The Court must consider whether the Commonwealth could be wrong in their perplexing refusal to conduct modern DNA testing that would remove nagging questions about this case. The Attorney General ostensibly supports *787 new legislation affording a limited measure of post-conviction DNA testing in certain cases. Yet, this legislation comes too late for this habeas petitioner, and the federal court is his last resort. [FN19]

> FN18. Walter (Tony) Snyder of Alexandria, Virginia, and David Vasquez of Arlington County, Virginia were also exonerated on DNA evidence. See 1996 REPORT, at 14. Mr. Snyder served seven years for a rape and sodomy that he did not commit. David Vasquez was exonerated by DNA evidence after serving five years on an unsubstantiated rape and murder conviction. See *id.*

> FN19. See S.1366. (Va. Feb. 22, 2001) (Virginia Senate bill providing for a procedure for the issuance of a writ of actual innocence and for the preservation and retention of biological evidence), *available at* <http:// legl.state.va.us/cgi-bin/legp504exe?011+sum +SB1366>.

The Court acknowledges that once the DNA tests are performed, the testing could re-affirm that Cherrix committed the crimes of which he was convicted. See *Barnabei v. Angelone*, 214 F.3d 463, 474 (4th Cir.2000) (emphasizing that all of the forensic and DNA evidence offered by the Commonwealth at trial implicated the habeas petitioner, and affirming dismissal of the habeas petition). Such a result would

remove the nagging questions surrounding this case that might otherwise undermine confidence in the criminal justice system. In the event that DNA testing re-affirms that Cherrix committed the crimes, this Court will consider the petition for writ of habeas corpus and render judgment accordingly.

131 F.Supp.2d 756

**Motions, Pleadings and Filings** (Back to top)

- 1:00CV01377 (Docket) (Aug. 11, 2000)

END OF DOCUMENT