Q:\COURT_DIR\HABEAS\Memoranda &
Orders\WadevBradyHabeasMTDFINALDRAFT.wpd
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
ROBERT WADE,                           )
      Petitioner,                      )
                                       )
      v.                               )    C.A. No. 04-12135-NG
                                       )
BERNARD F. BRADY,                      )
      Respondent.                      )
_____)
```
GERTNER, D.J.:

**MEMORANDUM AND ORDER RE: RESPONDENT'S MOTION TO DISMISS; PETITIONER'S MOTION TO AMEND AND CONSOLIDATE; AND PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL**
September 26, 2005

I. **INTRODUCTION**

On September 8, 1997, a jury convicted petitioner Robert Wade ("Wade") of aggravated rape and first degree murder in Massachusetts Superior Court, Plymouth County. The evidence against Wade was substantial: He was discovered naked in his house with the victim lying naked and bruised on his bed. The victim had been sexually assaulted; she died less than one month later.

On September 10, 1998, the Supreme Judicial Court ("SJC") affirmed Wade's murder conviction but vacated the rape conviction on the ground that it was a lesser included crime of the murder. More than twenty months later, on May 9, 2000, Wade sought state post-conviction relief on the remaining charge and was ultimately unsuccessful. See Commonwealth v.

Wade, 428 Mass. 147, 697 N.E.2d 541 (1998).

Wade now seeks federal habeas relief pursuant to 28 U.S.C. § 2254. The government has moved to dismiss Wade's petition as time-barred because the one-year time limit provided by 28 U.S.C. § 2244(d) has run. Wade concedes that his petition is time-barred, but argues that his situation is extraordinary, warranting the application of equitable tolling, which allows courts to review procedurally defaulted habeas petitions on the merits.

Since equitable tolling is completely unavailable to Wade absent a showing of "actual innocence," respondent's motion to dismiss Wade's habeas claims [document #9] is **GRANTED.** Wade's request for discovery in the form of DNA testing of the semen taken from the victim's vagina in connection with his habeas petition is also **DENIED**, as he cannot show anything resembling good cause for such an extraordinary measure. Wade's motion for the appointment of counsel [document #22] is **DENIED** in light of this order dismissing Wade's habeas petition. Wade's request for oral argument [document #34] is **DENIED.**

Wade's motion to amend the complaint [document #28], pursuant to Fed. R. Civ. Pro. 15(a), to add civil rights violations for the refusal to conduct DNA testing pursuant to 42 U.S.C. § 1983, and to add Timothy J. Cruz, District

Attorney for Plymouth County as a defendant, may stand on a different footing, with different standards and prerequisites. Since the parties have not briefed the issue, Wade's motion to amend is **GRANTED.**[1]

## II.  BACKGROUND

### A.   State Court's Factual Findings

The SJC's recitation of the facts is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). See Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000); Avellar v. DuBois, 30 F.Supp.2d 76, 79 (D. Mass. 1998). The state court's underlying findings of fact, including inferences properly drawn from those facts, are presumed to be correct. The burden is on the petitioner to rebut that presumption. 28 U.S.C. § 2254(e)(1); Parke v. Raley, 506 U.S. 20, 35 (1992). As such, it is useful to summarize the facts as found by the SJC in the course of denying Wade's claims:

At the time of his arrest, Wade lived and worked on a farm in Lakeville, Massachusetts. The farm owner lived with his 83 year-old mother, who had Alzheimer's Disease, in the main house, while Wade lived in a separate house. On October

---

[1] The rationale for bringing a civil rights suit to challenge the denial of access to DNA evidence is laid out in Harvey v. Horan, 285 F.3d 298, 304-26 (4th Cir. 2002) (Luttig, J., concurring); see also Godschalk v. Montgomery County District Attorney's Office, 177 F. Supp. 2d 366 (E.D. Pa. 2001).

24, 1993, the owner came home and could not locate his mother in the main house.  He went to Wade's residence, knocked on the door and when there was no response, opened it and turned on a light.  At this point, Wade emerged naked from a bedroom. The owner then discovered his mother, naked and bruised, on Wade's bed.  He telephoned the police; Wade was arrested.

The sexual assault examination performed on the victim was positive but did not include DNA testing.  As a consequence of the assault, the victim required hip replacement surgery.  The surgery took place on October 26, 1993.  On October 29, 1993, the victim contracted pneumonia, and she died on November 13, 1993.  At trial, the medical examiner testified that the cause of death was ultimately "blunt force injuries," and not the direct result of natural disease.

**B.  Procedural History**

Wade was indicted on December 6, 1993, on one count of aggravated rape and one count of first degree murder. Subsequently, the case was continued by agreement no fewer than forty times, for motions, conferences, and discovery compliance, until July 1, 1997.

The jury trial took place between September 3 and September 8, 1997.  Wade's counsel never ordered DNA testing

4

on the sperm sample found in the victim's vagina, presumably, because his theory – improbable to be sure – was that whatever sexual activity had occurred was consensual.  Moreover, in 1997, DNA testing was hardly common practice.  On September 8, 1997, the jury returned guilty verdicts on both counts of the indictment, aggravated rape under M.G.L. c. 265 § 22, and first degree murder on the theory of felony murder under M.G.L. c. 265 § 1.

Wade filed his notice of appeal on September 24, 1997, the same day that his counsel moved to withdraw and Wade moved for appointment of appellate counsel.  On September 29, 1997, counsel's motion to withdraw was allowed, as was Wade's motion for appointment of appellate counsel.  On November 21, 1997, new counsel filed her appearance.

The appeal was argued to the Supreme Judicial Court of Massachusetts on May 6, 1998.  On August 6, 1998, the SJC entered its decision, affirming the first degree murder conviction but vacating the aggravated rape conviction.  See Commonwealth v. Wade, 428 Mass. 147, 697 N.E.2d 541 (1998).  The rationale for its decision was that the murder was based on a felony-murder theory, and since the rape charge was the only underlying felony, it was a lesser, included offense.  Wade did not appeal to the United States Supreme Court.

On May 9, 2000, Wade filed a pro se motion to appoint yet another lawyer, and a pro se motion for a writ of habeas corpus. On May 23, 2000, the Superior Court denied both motions. In so doing, the court simply stated that it denied the motion for new counsel on the ground that Wade had been permitted to change lawyers once and could not do so again. Nothing in the record discloses the grounds for Wade's habeas claims or why the Superior Court rejected them. On July 17, 2000, a private attorney entered an appearance for Wade.

Over the next two years, counsel took no action on Wade's behalf. On August 21, 2002, counsel filed a motion in Superior Court for preservation of evidence. This motion was allowed on October 31, 2002.[2] On December 9, 2002, Wade filed a motion for DNA testing of physical evidence, and on December 26, 2002, Wade filed a motion for new trial. On July 29, 2003, a hearing was held on Wade's motion for DNA testing. The next day, July 30, 2003, Wade's motion for DNA testing was denied. In denying the motion, the court found Wade's testimony that he did not have sex with the victim unconvincing and in direct conflict with Wade's trial theory of consent.

---

[2] We do not know if the evidence preserved under this motion included the semen sample from the victim's vagina.

6

Wade filed a motion for reconsideration of the denial of his motion for DNA testing on August 13, 2003; it was denied without hearing on August 15, 2003. Wade's motion for a new trial was denied on December 23, 2003. The Superior Court filed a memorandum in connection with this denial, but we have not been provided with a copy.

On February 9, 2003, Wade filed a petition to the Single Justice of the SJC, pursuant to M.G.L. c. 278 § 33E, for leave to appeal both the denial of his motion for DNA testing and his motion for a new trial. Without comment, the Single Justice denied leave to appeal on April 12, 2004.

On October 8, 2004, Wade filed the instant petition for federal habeas relief, pursuant to 28 U.S.C. § 2254.

**C.   Petitioner's Grounds for Habeas Corpus Relief**

First, Wade claims that the Superior Court violated his right to due process by denying his post-conviction motions for DNA testing and for a new trial. Specifically, Wade challenges the rationale of the trial court in denying his motion for DNA testing – that it would be inconsistent with trial counsel's theory of consent and it was "not likely to exonerate the defendant." Wade insists that the DNA testing he requested "would be completely exonerating," and that the denial of such testing "is completely at odds with any sense

7

of fundamental fairness and due process."

Second, Wade claims that he was denied his right to the effective assistance of counsel when his trial counsel "pursued a manifestly unreasonable theory of defense," namely, the defense of consent.  Since the victim was incapable of consent due to Alzheimer's Disease, not to mention 83 years old and infirm, counsel's theory of defense was doomed from the outset.

Third, Wade claims that he was denied his Fifth and Fourteenth Amendment rights to due process and a fair trial because the trial court's jury instructions were erroneous in two respects.  First, the court failed to instruct that the victim's death from pneumonia after surgery must be found to be the natural and probable consequence of Wade's actions. Second, the court erroneously instructed that a finding of aggravated rape precluded a manslaughter verdict.

III.    **DISCUSSION**

   A.   **The Effect of The Applicable Statute of Limitations**

The government argues that Wade's habeas petition is time-barred because the one-year time limit under 28 U.S.C. § 2244(d) has expired.[3]  Under § 2244(d)(1)(A), the statute of

---

[3] As part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress enacted a statute of limitations governing the filing of federal habeas corpus petitions by state prisoners.  That provision, 28 U.S.C.

limitations began to toll on November 4, 1998,[4] allowing
ninety days after the state's highest court affirmed Wade's
murder conviction for Wade to file a petition for writ of
certiorari in the United States Supreme Court, which he failed
to do.  28 U.S.C. § 2244(d)(1)(A); see, e.g., Voravongsa v.
Wall, 349 F.3d 1, 3 (1st Cir. 2003) (for the purposes of
determining the timeliness of a federal habeas petition, a
state conviction becomes final upon the expiration of the
ninety-day period for filing for certiorari with the United
States Supreme Court).  Wade thus had until November 4, 1999,
to bring his habeas petition in federal court.  28 U.S.C. §
2244(d); see, e.g., Currie v. Matesanz, 281 F.3d 261, 262 (1st
Cir. 2002).  Wade did not file his habeas petition until
October 8, 1994, long after the statute of limitations had
lapsed.

---

§ 2244(d), provides, in relevant part:

> (1) A 1-year period of limitation shall apply to an application
> for a writ of habeas corpus by a person in custody pursuant to the
> judgment of a State court.  The limitation period should run from
> the latest of –
>
>> (A) the date on which the judgment became final by the
>> conclusion of direct review of the expiration of the time
>> for seeking such review ....

28 U.S.C. § 2244(d).

[4] The government alleges that this date was November 6, 1998 – 92 days
after the SJC's affirmance of Wade's murder conviction.  Even if the
government were correct, the outcome of the analysis would be the same.

Wade concedes this point.  However, he argues that his situation is extraordinary and warrants the application of equitable tolling, which permits the review of procedurally defaulted cases on the merits.

**B.    Equitable Tolling – A Narrow Exception**

### 1. The Legal Standard

In rare cases, courts have applied the doctrine of equitable tolling and allowed procedurally defaulted habeas claims to be reviewed on the merits.  "[H]abeas corpus is, at its core, an equitable remedy," wrote the Supreme Court in Schlup v. Delo, 513 U.S. 298, 319 (1995), adding that "[t]his Court has consistently relied on the equitable nature of habeas corpus to preclude application of strict rules of res judicata."  More specifically, the First Circuit held that, in enacting the one-year time limit in 28 U.S.C. § 2244(d)(1), "Congress intended to retain the flexibility afforded by the doctrine of equitable tolling."  Neverson v. Farquharson, 366 F.3d 32, 41 (1st Cir. 2004).

There are two ways to reach equitable tolling.  Claims that are procedurally defaulted "may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998)[citations

10

omitted].  "Cause" here essentially means a legitimate excuse for the default.  Id.  Wade makes no attempt to demonstrate "cause and prejudice;" instead he argues that he is "actually innocent."

## 2.  <u>"Actual Innocence"</u>

"Actual innocence means factual innocence, not mere legal insufficiency," wrote the <u>Bousley</u> Court, 523 U.S. at 623, quoting <u>Schlup</u>, 513 U.S. at 327-28. The Court went further, noting that "[t]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" <u>Bousley</u>, 523 U.S. at 623.  The Court did not elaborate on the meaning of "all the evidence" in <u>Bousley</u>.  However, it had already made itself clear in <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339, n.5 (1992), where "all the evidence" in the habeas context was described as evidence "including that alleged to have been illegally admitted (but with due regard to any unreliability of it), and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."  Furthermore, the Supreme Court has said that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." <u>Schlup</u>, 513 U.S. at 321.

Henderson v. Sargent, 926 F.2d 706 (8th Cir. 1991), cited
by the Supreme Court in Schlup, is one such extraordinary case
in which the Court found that the underlying facts satisfied
the "actual innocence" standard, thus permitting otherwise
time-barred habeas corpus review.  Henderson was convicted of
the murder of Willa Dean O'Neal, who was shot and killed by a
.22 caliber pistol in the furniture store that she and her
husband jointly owned and operated.  Henderson had purchased a
.22 caliber pistol from a pawn shop a few days before the
murder and returned it after the murder; a crumpled note which
had belonged to Henderson was found at the crime scene.  Id.
at 708.

Represented by different counsel in his habeas petition,
Henderson introduced startling new evidence that the real
murderer was Bob O'Neal, the victim's husband.  The record
demonstrated that the victim had told her daughter, Glenda
Fleetwood, that she wanted a divorce and that Bob O'Neal
threatened that "he'd make sure no other man ever had her."
Bob owned a .22 caliber pistol identical to the gun submitted
by the state as the murder weapon.  Hours before the murder,
he asked Glenda where her mother would like to be buried.  Bob
went into the store for a few minutes around the time of the
murder.  When Glenda discovered her mother's body and went to

see Bob with the police, he exclaimed without being told what
happened:  "Someone has robbed and killed my -- murdered my
wife."  "O'Neal himself testified before the district court
that he made this statement but never provided a satisfactory
explanation."  Id. at 709-711.  The Eighth Circuit ultimately
found that such an obviously inculpatory statement by the
victim's husband sufficed to meet the "actual innocence"
threshold.

In Bliss v. Lockhart, 891 F.2d 1335, 1342 (8th Cir.
1989), the Eighth Circuit concluded that "the gist of the
district court's factual findings suggested that the ... case
[fell] within the actual innocence exception."  In that case,
Sharon Anita Bliss was convicted along with her husband of the
rape of her minor son.  The "gist" of the district court's
factual findings in the habeas hearing included the unrebutted
testimony of clinical psychologist at a post-conviction bail
hearing that Bliss was under the total control and domination
of her husband.  The Eighth Circuit found that the evidence
negating Bliss's *mens rea* established her "actual innocence."

Finally, in Kuhlman v. Wilson, 477 U.S. 436, 455-61
(1986), the Court held that, in light of the "nearly
overwhelming" evidence against Wilson, he did not satisfy the
"actual innocence" standard, and that his successive habeas

petition must be dismissed.  This case involved the robbery of
a taxicab garage and the fatal shooting of its night
dispatcher.  In connection with these crimes, Wilson was
convicted of murder and felonious possession of a weapon.  The
evidence against Wilson was that he was seen fleeing the crime
scene and that later, while in jail, he unwittingly admitted
to a police informant that he had committed the crime.  The
trial court found that the informant never asked any questions
about the crime, that he only listened and that Wilson's
admission was spontaneous and unsolicited.

The Court held that the jailhouse informant's testimony, along
with all the other evidence, constituted nearly overwhelming
evidence, and that consequently Wilson failed to show actual
innocence.  <u>Id</u>.

### 3.  <u>Wade's Failure to Establish "Actual Innocence"</u>

Wade's presentation does not come remotely close to the
evidence presented in the <u>Henderson</u> and <u>Bliss</u> cases; indeed,
it is just the opposite.  Wade does not even try to rebut the
SJC's findings – about where Wade was found, his condition,
where the victim was found, her condition, or the proof of a
sexual assault.  Nor does he counter the SJC's findings that:

> . . . there was evidence that she had been dragged
> along a dirt road, and her shoulders, knees, and
> buttocks were badly scraped; gravel was embedded in

the torn tissue of her back.

Commonwealth v. Wade, 697 N.E.2d 541, 543 (Mass. 1998).  The court concluded, "[t]he evidence against the defendant of this brutal attack on a vulnerable, older woman was overwhelming." Id. at 546.

Wade does no more than insist that he did not have sex with the victim, pointing to a doctor's psychological evaluation that was prepared in anticipation of the 1997 trial, four years after the crime.  The doctor's report, however, is hardly independent proof.  It merely recites Wade's account of his inability to perform sexually after consuming a large amount of alcohol.[5]

It is not at all clear that DNA testing would make a difference in this case, that it would have predicted a different outcome before the jury, let alone that it would prove "actual innocence."[6]

C.    **Motion to Amend**

Wade's motion to amend the complaint [document #28],

---

[5] Wade also argues that he was deprived of effective assistance of counsel at trial because counsel "pursued a manifestly unreasonable theory of defense," namely, consent, and failed to order DNA testing.  This was a defense that could not have succeeded since the victim had Alzheimer's Disease, and was thus incompetent.

[6] Even if someone else had sexually assaulted the victim, Wade would then have to show how she wound up injured and laying in his bed.

15

pursuant to Fed. R. Civ. Pro. 15(a), to add civil rights
violations pursuant to 42 U.S.C. § 1983, and to add Timothy J.
Cruz, District Attorney for Plymouth County as a defendant,
arguably raises different issues.  Respondent opposes the
amendment on procedural grounds, by arguing that a habeas
petition - which is what Wade's suit is as of now - cannot be
amended to add claims that do not challenge the fact or length
of his confinement.  But respondent is mistaken as to what
Wade's motion to amend is asking to do:  Wade does seek to add
civil rights claims to his habeas petition; rather, he seeks
to add civil rights claims to his federal suit, so that the
instant action incorporates both habeas and civil rights
claims.  Respondent offers no case law suggesting that these
two varieties of claims cannot be pursued in the same action.

Indeed § 1983 has been used in some courts to announce a
duty to perform DNA testing, the violation of which amounts to
a violation of the plaintiff's civil rights.  See Harvey v.
Horan, 285 F.3d 298, 304-26 (4th Cir. 2002) (Luttig, J.,
concurring); see also Godschalk v. Montgomery County District
Attorney's Office, 177 F.Supp.2d 366 (E.D. Pa. 2001).  Since
the substantive issue has not been briefed in the instant
case, out of an abundance of caution, I will allow the motion

to amend.

III.    **CONCLUSION**

For the reasons discussed above, equitable tolling is unavailable to Wade because he has not shown "actual innocence." Therefore, respondent's motion to dismiss Wade's habeas claims [document #9] is **GRANTED.** Wade's request for discovery in the form of DNA testing of the semen taken from the victim's vagina is **DENIED** absent good cause for such an extraordinary measure. Wade's motion for the appointment of counsel [document #22] is **DENIED** in light of this order dismissing Wade's habeas petition. Wade's request for oral argument [document #34] is **DENIED.** Wade's motion to amend his complaint is **GRANTED.** Wade shall file an amended complaint with the Court by **October 11, 2005**, and service of process shall be executed immediately thereafter.

SO ORDERED.

Dated: September 26, 2005        s/ NANCY GERTNER U.S.D.J.