UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT WADE,<br><br>   Plaintiff,<br><br>v.<br><br>BERNARD F. BRADY,<br>THOMAS F. REILLY, and<br>TIMOTHY J. CRUZ<br><br>   Defendants. | Civil Action No. 04-12135-NG |

### DEFENDANTS REILLY AND CRUZ'S REPLY MEMORANDUM OF LAW AND FURTHER ARGUMENT IN SUPPORT OF THEIR MOTION TO DISMISS

Now come the defendants Thomas F. Reilly, the Massachusetts Attorney General and Timothy J. Cruz, the Plymouth District Attorney, through their attorney, and respectfully submit this reply memorandum of law and further argument in support of their motion to dismiss the above-entitled civil rights action.

### PRIOR PROCEEDINGS [1]

On December 6, 1993, a Plymouth County grand jury indicted Robert D. Wade for murder in violation of G. L. c. 265, § 1 and aggravated rape in violation of G. L. 265, § 22(a).

---

[1] The facts contained in this memorandum are drawn from the complaint, official public records, documents central to the plaintiff's claim or sufficiently referred to in the complaint. *Watterson v. Page*, 987 F. 2d 1 (1st Cir. 1993). Under Fed. R. Civ. P. 12(b)(6), documents attached to a motion to dismiss do not transform such a motion into one for summary judgment where they fit the "narrow exception" described in *Watterson* v. *Page*, 987 F.2d 1 (1st Cir. 1993). That exception applies to documents "the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiff's claim; or for documents sufficiently referred to in the complaint. *Id*. at 3-4. The exception clearly applies to this case. Therefore, this court may take the docket sheets and court filings into consideration of this motion to dismiss without converting it into a motion for summary judgment.

*See* Ex. B, Docket Sheets, *Commonwealth v. Wade*, PLCR1993-94856.[2] On September 8, 1997, after a jury trial before Massachusetts Superior Court Associate Justice John A. Tierney, the jury returned guilty verdicts on both counts, murder and aggravated rape. *See* Ex. A, Docket Sheets, *Commonwealth v. Wade*, PLCR1993-94856. Judge Tierney sentenced the plaintiff to life in prison. *Id.* The plaintiff timely appealed to the Massachusetts Supreme Judicial Court ("SJC"). *Id.* On August 6, 1998, the SJC held that the plaintiff's conviction for aggravated rape underlying the first-degree murder conviction was duplicative and had to be vacated and affirmed the plaintiff's conviction for murder. *See* Exhibit D, *Commonwealth v. Wade*, 428 Mass. 147, 697 N.E. 2d 541 (1998).

On May 9, 2000, the plaintiff filed a motion for a writ of habeas corpus in Plymouth Superior Court that was denied by Judge Tierney on May 19, 2000. *See* Ex. A, Docket Sheets, *Commonwealth v. Wade*, PLCR1993-94856. On December 9, 2002, the plaintiff, through new counsel, filed a motion for DNA testing of physical evidence that the Commonwealth opposed. *See* Ex. F and Ex. G. On July 30, 2003, Massachusetts Superior Court Associate Justice Richard J. Chin denied the plaintiff's motion for DNA testing. *See* Ex. A and Ex. H. On August 13, 2003, citing both *Godschalk v. Montogmery County District Attorney's Office*, 177 F. Supp. 2d 366 (E.D. Pa. 2001) and *Harvey v. Horan*, 285 F. 3d 298 (4th Cir. 2002), the plaintiff filed a motion for reconsideration of the denial of DNA testing. *See* Ex. A. and Ex. I. On August 15, 2003, Judge Chin denied the motion for reconsideration. *See* Ex. A and Ex. J. On December 26, 2002, Wade filed a motion for a new trial, again requesting DNA testing of the physical

---

[2] Exhibits A, B and C contain both typewritten and computerized pages of the docket for *Commonwealth v. Wade*, PLCR1993-94856. This reflects a conversion from manual to computerized dockets. The docket is complete.

evidence and asserting that because DNA testing existed at the time his trial, there was no excuse for trial counsel not to have ordered it. *See* Ex. K. On October 8, 2003, the Commonwealth filed an opposition to the motion for a new trial. *See* Ex. L. On December 23, 2003, Massachusetts Associate Justice Joseph M. Walker denied Wade's motion for a new trial. *See* Ex. N. In so doing, he concurred with Judge Chin's denial of the motion for DNA testing, specifically noting both that the overwhelming evidence against Wade demonstrated that DNA testing would not have exonerated him and that Wade had waived his right to assert that trial counsel was ineffective for failing to conduct DNA testing. *Id.* at pp. 3,6. On February 17, 2004, the plaintiff filed a petition to the single justice of the SJC for Suffolk County pursuant to G. L. c. 278, § 33E seeking leave to appeal the denial of both his motion for DNA testing and his motion for a new trial and again citing both *Godschalk v. Montogmery County District Attorney's Office*, 177 F. Supp. 2d 366 (E.D. Pa. 2001) and *Harvey v. Horan*, 285 F. 3d 298 (4th Cir. 2002) . *See* Ex. E, Docket Sheets, *Commonwealth v. Wade*, SJC for Suffolk County SJ-2004-0073 and Ex. N. The Commonwealth filed an opposition and on April 12, 2004, the single justice (Ireland, J.) issued an order denying the application under G.L. c. 278, § 33E for leave to appeal. *See* Ex. E and Ex. O.

    On October 8, 2004, the plaintiff filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Docket at 1. On January 11, 2005, the respondents, Thomas F. Reilly and Bernard Brady filed a motion to dismiss and a memorandum of law in support of their motion to dismiss the petition as time-barred. *See* Docket at 9 and 10. On March 23, 2005, this Court ordered additional briefing. *See* Docket at 17. On May 12, 2005, the petitioner filed a supplemental memorandum of law and a motion to amend the complaint. *See* Docket at 27 and

28.  On May 13, 2005, the respondents filed a memorandum of law.  *See* Docket at 25.  On May 18, 2005, the petitioner filed a motion to consolidate.  *See* Docket at 31.  On May 20, 2005, the respondents filed a memorandum in opposition to the motion to amend.  *See* Docket at 26.   On September 26, 2005, this Court entered an order allowing the respondents' motion to dismiss the habeas petition as time-barred and allowing the petitioner's motion to amend the complaint.  *See* Docket at 34.

On October 11, 2005, the plaintiff filed an amended complaint against Bernard Brady, Thomas F. Reilly and Timothy J. Cruz, alleging, *inter alia*, that by refusing to release biological evidence for DNA testing, and thereby preventing plaintiff Wade from gaining access to evidence which could exonerate him as the perpetrator, the defendants have deprived him access to exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  On November 1, 2005,  the defendants Reilly and Cruz filed a motion to dismiss the complaint and a memorandum in support of their motion to dismiss.  On December 12, 2005, the plaintiff filed a response to the defendants' motion to dismiss.  The defendants Thomas F. Reilly, the Massachusetts Attorney General and Timothy J. Cruz, the Plymouth District Attorney, submit this reply memorandum of law and argument in further support of their motion to dismiss.

## ARGUMENT

I. **THE COMPLAINT SHOULD BE DISMISSED AS TIME-BARRED UNDER THE APPLICABLE STATUTE OF LIMITATIONS.**

It is well-settled that § 1983 creates a private right of action for redressing abridgements or deprivations of federally assured rights.  *See Centro Medico Del Turabo, Inc., et al. v. Fediciano De Melecio*, 406 F.3d 1, 6 (2005), citing *Cox v. Hainey*, 391 F.3d 25, 29 (1st. Cir.

4

2004); *McIntosh v. Antonio*, 71 F.3d 29, 33 (1st Cir. 1995). Since § 1983 does not contain a built-in limitations period, a federal court adjudicating a section 1983 action must borrow the forum state's general statute of limitations for personal injury actions. *Id.*, citing *Owens v. Okure*, 488 U.S. 235, 240-241, 249-50 (1989); *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). As the defendants have explained in their memorandum of law in support of the motion to dismiss, in Massachusetts, the applicable statute of limitations for § 1983 actions is the "three-year limitation period for personal injury actions" in G.L. c. 260, § 2A. *See* Defendants Reilly and Cruz' Memorandum of Law in Support of their Motion to Dismiss at p.8-9, citing *McIntosh*, 71 F.3d at 34.[3] The accrual date is determined in accordance with federal law. *See Centro Medico Del Turabo, Inc., et al. v. Fediciano De Melecio*, 406 F.3d at 6, citing *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 353 (1st Cir. 1992). In a §1983 case, a claim ordinarily accrues "when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Id.*, quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d at 353; also citing *Nieves-Marquez v. Puerto Rico*, 353 F. 3d 108, 119-20 (1st Cir. 2003). In the instant case, Wade asserts that his claims are not time-barred because the Commonwealth's refusal to grant the requested post-conviction access to evidence for DNA testing is current and ongoing, and thus constitutes a "continuing violation" to which the statute of limitations does not apply, or in the alternative, the applicable limitations period should be equitably tolled. The defendants Reilly and Cruz respectfully submit this reply.

---

[3] The statute provides, in pertinent part, that "actions of tort . . . to recover for personal injuries . . . shall be commenced only within three years next after the cause of action accrues." G.L. c. 260, § 2A.

### A. The Denial of Post-Conviction Access to Evidence Is Not A Continuing Violation.

Under the serial violation branch of the continuing violation doctrine, a plaintiff may link a number of discriminatory acts emanating from the same discriminatory animus, even though each act constitutes a separate wrong. *See Centro Medico Del Turabo, Inc., et al. v. Fediciano De Melecio*, 406 F.3d at 6, citing *Provencher v. CVS Pharmacy*, 145 F.3d 5, 14 (1st Cir. 1998); *Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir. 1990). If the plaintiff can forge that link and can also show that at least one act in the series occurred within the limitations period, the suit may be considered timely as to all the acts. *Id.*, citing *Lawton v. State Mut. Life Assur. Co.*, 101 F.3d 218, 221-22 (1st Cir. 1996); *Kassaye v. Bryant Coll.*, 999 F. 2d 603, 606 (1st Cir. 1993).

Wade cannot clear this hurdle: as defendants Reilly and Cruz have already explained, Wade's jury trial occurred in September, 1997. *See* Ex. A, Docket Sheets, *Commonwealth v. Wade*, PLCR1993-94856. On August 25, 1997, the SJC issued two decisions relative to DNA testing, holding that (1) the DNA test results derived from the polymerase chain reaction (PCR) based tests are scientifically reliable; and (2) DNA test results from the short tandem repeat (STR) method are scientifically valid. *See Commonwealth v. Sok*, 425 Mass. 787, 683 N.E.2d 617 (1997); *Commonwealth v. Rosier*, 425 Mass. 807, 685 N.E.2d 739 (1997). Furthermore, on September 30, 1997, the Massachusetts Legislature enacted legislation related to the State DNA Database. *See* M.G.L. c. 22E, §1 through §15. Thus, the accrual period for the plaintiff's DNA claim therefore started, at latest, in September, 1997, when plaintiff knew, or had reason to know, of the injury on which his action is based. *See McIntosh*, 71 F.3d at 34. Specifically, trial counsel's strategy to press the issue of consent, a strategy that the state court determined (despite Wade's waiver of the issue) was eminently reasonable in light of the evidence against

him (*see infra* at pp. 13-14; ex. N. at pp. 6-8), resulted in a decision not to conduct DNA testing. By that decision, Wade, through his counsel was charged with the knowledge that, in the event of conviction, his ability to obtain such testing would be severely restricted. As such, his three year statute of limitation period began to run at the time of his trial. Consequently, under the applicable three-year limitations period, the plaintiff had until October, 2000 to institute this action. Instead, the plaintiff waited until October 12, 2005, to file his complaint— eight years after the events underlying his claims.

Furthermore, the plaintiff did not request his DNA in state court until December 9, 2002, when the plaintiff, through new counsel, filed a motion for DNA testing of physical evidence that was denied on July 30, 2003 by Massachusetts Superior Court Associate Justice Richard J. Chin. *See* Ex. B, Docket Sheets, *Commonwealth v. Wade*, PLCR1993-94856. Additionally, in his motion for reconsideration of the denial of the motion for DNA testing, Wade specifically acknowledged that DNA testing was available in 1993 and should have been employed. *See* Ex. I at p.1. Thus, the 2002 motion for post-conviction access to DNA testing in state court does not toll the statute of limitations for this § 1983 action where the statute of limitation expired in 2000. *Cf. Delaney v. Matesanz*, 264 F.3d 7, 11 (1st Cir. 2001) (AEDPA's limitations period not tolled by new trial motion because, by the time it was filed, the one-year period had already expired). "Common-sense teaches that a plaintiff cannot resuscitate time-barred acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, non-discriminatory, non-time-barred act." *Lawton v. State Mut. Life Assur. Co.*, 101 F.3d at 222. For these reasons, the plaintiff's § 1983 claims seeking post-conviction access to DNA testing related to his September, 1997 convictions are time-barred, and as such should be dismissed.

### B.     The Statute of Limitations Should Not Be Equitably Tolled.

The plaintiff also asserts that the doctrine of equitable tolling applies in this case. *See* Plaintiff's Response to Defendants' Motion to Dismiss at p.11. Equitable tolling is only available "'in exceptional circumstances'" to extend the statute of limitations. *Vistamar Inc., v. Fagundo-Fagundo, et al.*, 430 F.3d 66, 71 (1st Cir. 2005), quoting *Neverson v. Farquharson*, 366 F. 3d 32, 40 (1st Cir. 2004); *Delaney v. Matesanz*, 264 F.3d 7, 14 (1st Cir. 2001)("equitable tolling, if available at all, is the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances."). The First Circuit has left open the question of whether the equitable tolling of § 1983 is governed by state or federal law. *Vistamar Inc., v. Fagundo-Fagundo, et al.*, 430 F.3d at 71, citing *Benitez-Pons v. Commonwealth of Puerto Rico*, 136 F.3d 54, 61 (1st Cir. 1998)(citing *Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224, 229 &n.2(1st Cir. 1990)). Federal law requires a showing of "excusable ignorance of the statute of limitations caused by some misconduct of the defendant." *Id.*, citing *Benitez-Pons,* 136 F.3d at 61. In Massachusetts, equitable tolling is used "only sparingly," and is generally limited to the specific exceptions such as excusable ignorance or where the defendant affirmatively misled the plaintiff. *See Shafnacker v. Raymond James & Associates, Inc.*, 683 N.E.2d 662, 665-666, 425 Mass. 724, 728 (Mass. 1997), citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Andrews v. Arkwright Mur, Ins. Co.*, 423 Mass. 1021, 1022, 673 N.E.2d 40 (1996). In the instant case, Wade does not allege ignorance of the statute of limitations, nor does he claim that the defendants affirmatively misled him, rather he alleges that the ineffective assistance of his trial counsel entitles him to equitably toll the statute of limitations. *See* Plaintiff's Response

to Defendants' Motion to Dismiss at p. 12.[4]  However, in a thorough and carefully reasoned memorandum and order, Massachusetts Superior Court Associate Justice Joseph M. Walker, III, rejected Wade's ineffective assistance of counsel claim.  Judge Walker explained that the fact that Wade's trial attorney failed to request DNA testing did not raise a substantial issue that was likely to have influenced the jury's verdict, and thus did not establish ineffective assistance of counsel.  *See* Ex. M at. p.5-6.  In fact, Judge Walker specifically determined that Wade's trial counsel's determination not to request DNA testing was not unreasonable and below the standard of a reasonably competent counsel, resulting in a deprivation of an otherwise available substantial ground of defense.  *Id.*, citing *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974).

As in *Vistamar Inc., v. Fagundo-Fagundo, et al.*, 430 F.3d at 71-72, the principle of fundamental importance in this case is that "equitable tolling is unavailable where a party fails to exercise reasonable diligence." *Id.*, citing *Benitez-Pons,* 136 F.3d at 61.  Wade was convicted of murder and aggravated rape on September 8, 1997, yet he waited until October 11, 2005 to filed the instant § 1983 action.  *See* Ex. A, Docket Sheets, *Commonwealth v. Wade*, PLCR1993-94856 and Docket at 36.   In fact, in the order denying Wade's motion for a new trial, Judge Walker observed that at the time of the appeal from the conviction, Wade was aware that his trial counsel had not sought DNA analysis.  *See* Ex. M. at p. 6.  Thus, the issue of ineffective assistance of counsel for failure to conduct the tests was ripe, but was not raised during Wade's full appeal.  *Id.*  Judge Walker concluded that Wade's failure to raise the issue during the direct appeal created a waiver of the issue.  *Id.*  Where Wade failed to pursue diligently the vindication

---

[4] To the extent that Wade alleges a mental disability as a basis for equitable tolling, the record indicates Wade was competent to stand trial.  *See* Ex. O (filed under seal).

of his rights, the law will not undermine repose by extending the statute of limitations to accommodate him. *Vistamar Inc., v. Fagundo-Fagundo, et al.*, 430 F.3d at 72, citing *Niehoff v. Maynard*, 299 F.3d 41, 52 (1st Cir. 2002)("the guiding principle behind the doctrine of equitable tolling is that the law should be used to achieve some approximation of justice."); *Gonzalez v. United States*, 284 F.3d 281, 291 (1st Cir. 2002) ("Tolling is appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands."). Wade simply has failed to demonstrate the exercise of due diligence. Thus, the statute of limitations should not be equitably tolled.

## II.     WADE'S 42 U.S.C. § 1983 CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL.

### A.     The Doctrine of Collateral Estoppel.

Where the Massachusetts state courts have already determined that Wade is not entitled to post-conviction testing of DNA evidence, Wade is precluded from litigating his constitutional claims in this court. *See* 28 U.S.C. § 1738 (stating that federal courts must apply the preclusion law of the state court that rendered an earlier judgment); *see also Moore v. Lockyer, et al*, 2005WL2334350, *6 (N.D.Cal. Sept. 23, 2005). It is well-settled that the doctrine of collateral estoppel applies in civil rights actions brought pursuant to 42 U.S.C. § 1983. *See Johnson v. Mahoney, et al,* 424 F.3d 83, 92 (1st Cir. 2005), citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Federal courts must give to a state-court judgment the same preclusive effect as would be given by the courts of the state from which the judgment emerged. *Id.*, citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982), *Allen*, 449 U.S. at 96.

As the First Circuit clearly explained in *Johnson v. Mahoney, et al,* in Massachusetts, courts apply the doctrine of collateral estoppel as it has been defined in the Restatement

10

(Second) of Judgments (1982). *See Johnson v. Mahoney, et al,* 424 F.3d at 92, citing *Martin v. Ring*, 401 Mass. 59, 514 N.E.2d 663, 664 (1987). Section 27 of the Restatement provides that "'when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Id*., quoting Restatement (Second) of Judgments § 27 (1982).

Indeed, in Massachusetts, a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution. *See Aetna Cas. & Sur. Co. v. Niziolek,* 395 Mass. 737, 481 N.E.2d 1356, 1360 (1985). Thus, in circumstances similar to this case, Massachusetts courts have abandoned the requirement of mutuality. *See Johnson v. Mahoney, et al,* 424 F.3d at 93, citing *Aetna Cas. & Sur. Co. v. Niziolek*, 395 Mass. 737, 481 N.E.2d 1356, 1360 (1985). Furthermore, in Massachusetts, courts have often applied the doctrine of collateral estoppel even though the second action involved a different type of claim from the first. *See Johnson v. Mahoney, et al,* 424 F.3d at 93, citing, *e.g., Alba v. Raytheon Co.*, 441 Mass. 836, 809 N.E.2d 516, 521-23 (2004)(claims brought in worker's compensation action and discrimination action were identical for collateral estoppel purposes); *Green v. Town of Brookline*, 53 Mass. App. Ct. 120, 757 N.E. 2d 731, 734-735 (2001)(rule of collateral estoppel barred relitigation of Civil Commission's finding, despite the fact that second action was based on the Workers' Compensation Act); *Martin*, 514 N.E.2d at 665 (finding on issue of causation in workmen's compensation proceeding could be given defensive collateral estoppel effect in negligence action brought by worker against home owner).

### B. The Plaintiff Should Not Be Allowed to Relitigate Issues Already Fully Litigated and Decided In the Massachusetts State Courts.

Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry*, 449 U.S. at 94. In the instant case, Wade has already litigated his request for post-conviction access to DNA testing in the Massachusetts state courts. On December 9, 2002, Wade filed a motion for DNA testing of physical evidence that the Commonwealth opposed. *See* Ex. F and Ex. G. On July 30, 2003, Massachusetts Superior Court Associate Justice Richard J. Chin denied the plaintiff's motion for DNA testing. *See* Ex. A and Ex. H. In the order denying the defendant's motion for a new trial, Judge Chin relied upon transcript portions of the trial testimony, a letter from the psychologist retained by the defendant's attorney evaluating the competency of the defendant, and the serology report from the Massachusetts Crime Laboratory which concluded that "'at this level of analysis, the suspect, Robert Wade, **can not be excluded**.'" (emphasis in the original). *See* Ex. H. Judge Chin explained that Wade's assertion that a higher level of analysis, *i.e.* DNA testing, would exculpate him was based entirely on Wade's statement in his affidavit that he did not have sex with the victim. *Id*. Judge Chin did not find Wade's assertion credible, and referenced Wade's own statements to contradict his assertion that he did not have sex with victim. *Id*. Judge Chin pointed out that at trial Wade did not deny having sex with the victim, and in fact asserted consent as his defense. *Id.* Additionally, in the order denying DNA testing, Judge Chin set forth that when the victim's son found Wade naked in his cottage with the victim naked, bruised and sprawled on Wade's bed, Wade stated that "she came to me" and that he would leave the following day. *Id*.

Furthermore, in his December 17, 2003, memorandum, findings and orders on Wade's motion for a new trial, Judge Walker concurred with Judge Chin's conclusions regarding Wade's affidavit and also determined that counsel's affidavit raised no fresh and substantive issues that warrant further evidentiary hearing. *See* Ex. M. Judge Walker then carefully set forth the overwhelming evidence that demonstrated that DNA testing would not have exonerated Wade. *Id.* Specifically, Judge Walker relied upon the following evidence at trial:

(1) the victim's son found the naked defendant coming from his (Wade's) bedroom, inside of which the victim's son subsequently discovered his naked mother;

(2) the elderly victim had been dragged to the defendant's bedroom prior to being found by her son;

(3) there was no one else on the property at the time of offense;

(4) Wade lived in a second residence at the back of the property;

(5) the defendant stated to the victim's son that the victim "came to me" and was thereafter heard to utter to the victim, "See all the trouble you got me into;"

(6) at the hospital emergency room after the assault, the victim was able to correctly identify the day of the week, and was also able to answer a question regarding who had assaulted her by stating, "...it was the man out back...Bob;"

(7) serology evidence from the assault scene, and blood and saliva samples obtained from the defendant were analyzed and compared by the Massachusetts State Police laboratory, and the defendant was not excluded as a source for the serology evidence.

*See* Ex. M. at p. 4. In addition, Judge Walker also referenced Wade's statements to the a psychiatrist to the effect that because of his ingestion of alcohol, he was in a state of physical

blackout that precluded him from having any memory of what happened. *Id.* Furthermore, Judge Walker also pointed out Wade made post-arrest statements to the police to the effect that he had gotten away with murder before and he would avoid liability for this sexual crime as well. *Id.*

Based upon all of this inculpatory information, along with other evidence produced at trial, Judge Walker reasonably concluded that "there is simply no compelling reason to overturn Associate Justice Chin's denial of the defendant's motion for DNA testing, or to authorize DNA testing now or in the future." *See* Ex. M. at p. 5.

Judge Walker also observed that at the time of the appeal from the conviction, Wade was aware that his trial counsel had not sought DNA analysis. *See* Ex. M. at p. 6. For this reason, the issue of ineffective assistance of counsel for failure to conduct the tests was ripe, but was not raised during Wade's full appeal. *Id.* Judge Walker held that Wade's failure to raise the issue during the direct appeal created a waiver of the issue. *Id.*

As a matter of Massachusetts appellate procedural law, there exist special provisions for those indicted for, and convicted of, first degree murder. Under M.G. L. c. 278, § 33E, such a "capital" defendant has a right of direct appeal to the SJC, without the case being first entered on the docket of the Appeals Court. *See Dickerson v. Latessa*, 872 F.2d 1116, 1117-1118 (1st Cir. 1989). The scope of the SJC's review is exceedingly broad under § 33E -- it reviews the "whole case" to determine whether the verdict is against the weight of the evidence, and the court is empowered to order a new trial or to reduce the verdict to a lesser degree of guilt if the interests of justice so require. *See Dickerson v. Latessa*, 872 F.2d at 1118; 32 Nolan & Henry, *Criminal Law*, § 187 (2d ed. 1988 and 1993 Supp.).

After plenary review on direct appeal, a capital defendant, like Wade, may not appeal the decision of the Superior Court denying his motion for a new trial unless the "gatekeeper," *i.e.*, a single justice of the Supreme Judicial Court for Suffolk County, finds that the appeal presents a "new" and "substantial" question which ought to be determined by the full court. *Dickerson v. Latessa*, 872 F.2d at 1118. In other words, it is the gatekeeper's duty to "screen[ ] out appeals that lack merit." *See Commonwealth v. Francis*, 411 Mass. 579, 584, 583 N.E.2d 849 (1992). The gatekeeper's denial of a defendant's petition for leave to appeal is final and unreviewable. *Commonwealth v. Ambers*, 397 Mass. 705, 710-711, 493 N.E.2d 837 (1986); *Leaster v. Commonwealth*, 385 Mass. 547, 548, 432 N.E.2d 708, 709 (1982). *See McLaughlin v. Gabriel*, 726 F.2d 7, 9 (1st Cir. 1984).

In his petition to the single justice of the SJC pursuant to G.L. c. 278, Wade argued that the "denial to a defendant of access to evidence which would be completely exonerating represents a most egregious denial of due process guaranteed by the Fourteenth Amendment." *See* Ex. N at p. 3. Relying upon both *Godschalk v. Montogmery County District Attorney's Office*, 177 F. Supp. 2d 366 (E.D. Pa. 2001) and *Harvey v. Horan*, 285 F. 3d 298 (4th Cir. 2002), Wade claimed it was a violation of his constitutional right to exculpatory evidence for the trial court to deny his motion for DNA testing. *See* Ex. N at p. 5. On April 12, 2004, the single justice (Ireland, J.) issued an order denying the application under G.L. c. 278, § 33E for leave to appeal. *See* Ex. E. Thus, the single justice's denial of Wade's petition indicates that it failed to present a "new" and "substantial" question which ought to be determined by the full court. *See Dickerson v. Latessa*, 872 F.2d at 1118. In these circumstances, where Wade relies upon the same cases, specifically *Godschalk v. Montogmery County District Attorney's Office*, 177 F.

Supp. 2d 366 (E.D. Pa. 2001) and *Harvey v. Horan*, 285 F. 3d 298 (4th Cir. 2002), in the instant civil rights action that he relied upon in the SJC, it is clear that the SJC recognized that the request for post-conviction testing of DNA evidence concerned constitutional rights. *See Johnson v. Mahoney, et al,* 424 F.3d at 94. For this reason, no matter the label attached to the request for post-conviction testing of DNA evidence, the real question, whether Wade is entitled to such post-conviction testing of DNA evidence, was adjudicated and decided adversely to Wade by the single justice of the SJC, precluding its relitigation now. *Id.* [5]   Thus, the plaintiff's complaint should be dismissed.

## CONCLUSION

For these additional reasons, this Court should dismiss this complaint.

Respectfully submitted,

THOMAS F. REILLY
Attorney General

/s/ Eva M. Badway
Eva M. Badway
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2824
BBO # 635431

Dated: January 6, 2006

---

[5] In his amended complaint, in an effort to attain post-conviction access to testing of DNA, Wade sets forth the following claims for relief: (1) violation of substantive due process; (2) violation of procedural due process; (3) right to meaningful access to court; (4) actual innocence; (5) confrontation and compulsory process; (6) cruel and unusual punishment; (7) violation of due process to clemency. *See* Complaint at p.5-7. As argued above, no matter the label attached to the request for post-conviction testing of DNA evidence, the real question, whether Wade is entitled to such post-conviction testing of DNA evidence, was adjudicated and decided adversely to Wade by both the state Superior Court and the single justice of the SJC. *See* Ex. E.

**Certificate of Service**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 6, 2006.

                                              /s/ Eva M. Badway
                                              Eva M. Badway