# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **ROBERT WADE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-12135- NG** |
| | ) | |
| **BERNARD F. BRADY, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

The Defendants, Bernard F. Brady, Timothy J. Cruz, and Martha Coakley (the "Defendants"), hereby file this memorandum in opposition to the Motion for Summary Judgment filed by the Plaintiff, Robert Wade (the "Plaintiff"), and in support of the Defendants' Cross-Motion for Summary Judgment. Judgment must be denied the Plaintiff and awarded to the Defendants, given that this action does not present a justiciable case or controversy, it is untimely, and the Plaintiff has not demonstrated an entitlement to relief under an appropriate standard.

# ARGUMENT[1]

Several important principles of law dictate that judgment not be awarded to the Plaintiff, but instead be awarded to the Defendants.  In many ways, the Plaintiff approaches this stage of the instant litigation as though it concerns a motion for potentially exculpatory evidence in a criminal case.  It does not.  Rather, it concerns the prospect of summary judgment in a civil action pursuant to 42 U.S.C. § 1983 ("§ 1983") seeking equitable relief in the form of an order allowing access to testing of DNA evidence.[2]  Accordingly, the Plaintiff cannot succeed without satisfying all jurisdictional prerequisites, proving all elements, and overcoming all relevant bars to recovery normally attendant to obtaining pre-trial judgment on a civil claim for redress of injury as a result of a violation of federal rights.  As established below, this he cannot do.

---

[1] This Court is well acquainted with the factual and procedural background of this case.  See Wade v. Brady, 460 F. Supp. 2d at 229-33 (D. Mass. 2006).  Accordingly, the Defendants incorporate herein their discussion of the factual background of this case contained in their memoranda of law in support of their motions to dismiss.

Also, for purposes of the parties' cross-motions for summary judgment, the Defendants generally treat the determinations made by this Court in denying the Defendants' motion to dismiss the Plaintiff's amended complaint as settled and, thus, do not challenge them further herein.  However, the Defendants do not concede or waive any arguments with respect to such determinations and reserve their right to challenge them in the future as appropriate.

[2] Despite the Plaintiff's assertion of various causes of action in his amended complaint, he has made clear that his action constitutes a civil rights action under § 1983 for equitable relief in the form of access to testing of DNA evidence.  (Pl.'s Mem. passim.)  The Defendants thus treat his action as such.

The familiar text of § 1983 reads as follows, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

## I.     Standard for evaluating a request for summary judgment.

The United States Court of Appeals for the First Circuit has recently well summarized the

standards for evaluating a motion for summary judgment as follows:

> Summary judgment is appropriate when there is no genuine issue as to any
> material fact and the moving party is entitled to judgment as a matter of
> law based on the pleadings, depositions, answers to interrogatories,
> admissions on file, and any affidavits.  When considering arguments for
> summary judgment, "[a court] must disregard improbable or overly
> attenuated inferences, unsupported conclusions, and rank speculation."  To
> defeat a motion for summary judgment, the evidence offered by the
> adverse party cannot be "merely colorable" or speculative.  The evidence
> "must be significantly probative of specific facts."  "A dispute is genuine
> if the evidence about the fact is such that a reasonable jury could resolve
> the point in the favor of the non-moving party."  "A fact is material if it
> has the potential of determining the outcome of the litigation."

Thompson v. Coca-Cola Co., --- F.3d ----, 2008 WL 1722252 (1st Cir. Apr. 15, 2008) (citations

omitted) (quoting five First Circuit opinions); see also Fed. R. Civ. P. 56(c) ("The judgment

sought should be rendered if the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law.").  Application of this standard compels the conclusion

that it is the Defendants who are entitled to summary judgment here.

## II.     The Plaintiff's action is not justiciable, as it is speculative whether his failure to receive DNA evidence has directly caused him injury in fact that is redressable here.

Judgment must be entered in the Defendants' favor because the Plaintiff's action does not

present a justiciable case or controversy.  It is axiomatic that the case-or-controversy requirement

of Article III of the United States Constitution deprives a federal court of jurisdiction to

adjudicate a dispute where a plaintiff lacks standing.  E.g., Donahue v. City of Boston, 304 F.3d

110, 115 (1st Cir. 2002) (stating, in action under § 1983, that "[t]he standing doctrine is

grounded in the case-or-controversy requirement of Article III.  'In essence the question of

standing is whether the litigant is entitled to have he court decide the merits of the dispute or of

particular issues.'" (citation omitted) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975))).  In

light of its jurisdictional nature, the standing requirement is "not subject to waiver."  Lewis v.

Casey, 518 U.S. 343, 349 n.1 (1996) (involving action under § 1983); accord United States v.

Hays, 515 U.S. 737, 742 (1995) (noting that "standing 'is perhaps the most important of [the

jurisdictional] doctrines.'" (quoting, with alteration, FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230-

31 (1990), overruled on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC, 541 U.S. 774

(2004))); see also Fed. R. Civ. P. 12(g)-(h) (providing that defense of lack of subject-matter

jurisdiction is not waived if not raised in an initial pleading or motion to dismiss, and that issue

may be addressed by court at any time).  Moreover, a court may not defer consideration of such a

jurisdictional question or "'assume' jurisdiction for the purpose of deciding the merits."  See

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-102 (1998).  "'Without jurisdiction the

court cannot proceed at all in any cause.'  . . . The requirement that jurisdiction be established as

a threshold matter 'spring[s] from the nature and limits of the judicial power of the United

States' and is 'inflexible and without exception.'"  Id. (quoting Ex parte McCardle, 74 U.S. 506,

514 (1868), in the first instance, and Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382

(1884), in the second instance).

The aspects of the standing doctrine that are relevant here have been summarized in the

following manner:

> The "irreducible constitutional minimum of standing" contains three
> requirements.  First, a plaintiff seeking to invoke a federal court's
> jurisdiction must show that he has "suffered or is threatened by injury in
> fact to a cognizable interest."  The asserted injury must be "(a) concrete
> and particularized; and (b) actual or imminent, not conjectural or
> hypothetical."  Second, the plaintiff must show a causal connection
> between the asserted injury and the challenged action of the defendant;
> this causal connection cannot be overly attenuated.  And third, the plaintiff

must show that it is likely – rather than merely speculative – that "the
injury will be redressed by a favorable decision."

Donahue, 304 F.3d at 115 (citations omitted) (quoting Save Our Heritage, Inc. v. Federal

Aviation Admin., 269 F.3d 49, 55 (1st Cir. 2001), in the second instance, and Lujan v. Defenders

of Wildlife, 504 U.S. 555, 560-61 (1992), in the remaining instances).[3]

Standing must be thoroughly established by the Plaintiff and evaluated by the Court.  It

"'is gauged by the specific common-law, statutory or constitutional claims that a party presents.'

That is, 'the standing inquiry requires careful judicial examination of . . . whether the particular

plaintiff is entitled to an adjudication of the *particular claims asserted*.'"  Donahue, 304 F.3d at

115-16 (citation omitted) (quoting International Primate Protection League v. Administrators of

Tulane Educ. Fund, 500 U.S. 72, 77 (1991)).  "The party seeking to invoke the federal court's

jurisdiction – normally, the plaintiff – bears the burden of pleading and proof on each step of the

standing pavane."  Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005) (involving

civil action seeking injunctive and declaratory relief as a result of alleged constitutional

violations, and citing Lujan, 504 U.S. at 561).  The combination of the above principles dictates

that "a plaintiff must ensure that he establishes standing for each claim and for each form of

relief sought."  Donahue, 304 F.3d at 116.  At the summary judgment stage, "each element [of

standing] must be supported in the same way as any other matter on which the plaintiff bears the

burden of proof, *i.e.*, with the manner and degree of evidence required at [that stage] of the

litigation."  Lewis, 518 U.S. at 357-58 (first alteration in original).

---

[3] Causation of injury is also called for by the text of § 1983.  42 U.S.C. § 1983 (providing for one
who violates rights to be "liable to the party injured").  However, it appears that issues regarding
the causation of injury in the § 1983 context are more commonly analyzed by courts, at least in
the First Circuit, through the lens of the standing doctrine.  See infra (citing case law addressing
issues of causation of injury in § 1983 context).  The Defendants will thus do the same herein,

The Plaintiff here cannot meet his burden.  Even assuming based on this Court's prior decision that there is a constitutional right to post-conviction access to DNA evidence (which the Defendants do not concede), he still cannot establish standing, because the extent to which any injury has been caused by his failure to access the DNA samples and can be redressed in this action is purely conjectural.  The Plaintiff's action could be viewed as alleging one of three forms of injury related to conduct by the Defendants:  1) simply not receiving  the evidence at issue; 2) being deprived of meaningful access to the courts; or 3) being kept in confinement.  The first form does not constitute injury in fact, because it is not "'actual or imminent'" and "'concrete.'"  <u>Donahue</u>, 304 F.3d at 115 (quoting <u>Lujan</u>, 504 U.S. at 560-61).  That is, the *mere lack of possession* of the DNA evidence, without more, cannot be found to harm the Plaintiff.

As to the second form – being deprived of meaningful access to the courts – the Plaintiff cannot sufficiently establish injury in fact, causation, or redressability.  In the access-to-the-courts context, injury for standing purposes involves an actual hindrance of the ability to pursue a nonfrivolous claim.  <u>Lewis</u>, 518 U.S. at 343-57 (involving the alleged deprivation of the right to access the courts as a result of deficiencies in prison law libraries and services).  Examples of such injury might include being prevented from filing a complaint or having a complaint dismissed.  <u>Id.</u>  However, "[c]ourts have no power to presume and remediate harm that has not been established."  <u>Id.</u> at 360 n.7.  In the instant case, this Court recognized in addressing the applicability of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), that "[t]he results of any such test are uncertain:  they could be exculpatory, inclusive, or inculpatory," and "[t]he DNA evidence that [the Plaintiff] seeks . . . may . . . yet be found inadmissible . . . ."  <u>Wade v. Brady</u>, 460 F. Supp. 2d 226, 236-39 (D. Mass. 2006).  It has further commented that "the only *inevitable* consequence

without waiving any arguments as to the Plaintiff's inability to satisfy the elements of § 1983 as

of plaintiff's § 1983 action would be the release of evidence to a laboratory for DNA testing. . . . [The Plaintiff's] success in this action does not even necessarily speed consideration of his release." Id. If it is such a matter of conjecture whether the Plaintiff would have grounds for and be able to bring a nonfrivolous challenge to his conviction if he had access to the DNA evidence, then it cannot be said that his injury in lacking such access is "concrete and . . . actual or imminent," as opposed to "conjectural or hypothetical." Donahue, 304 F.3d at 115 (quoting Lujan, 504 U.S. at 560-61); see also Lewis, 518 U.S. at 343-57 (explaining that standing requires "actual injury"). Similarly, if there is such an attenuated connection between the Plaintiff's success here and a court's meaningful review of his conviction, then the causal connection between the Defendants' conduct and such court review must be found equally attenuated. And to the extent that it is "speculative" whether a favorable decision in this action will lead to future, meaningful court review of the Plaintiff's conviction, then redressability cannot been shown. Donahue, 304 F.3d at 115.

     With respect to the third possible form of injury – being confined – the Plaintiff cannot adequately demonstrate causation and redressability. In addition to the comments quoted in the above discussion of the second possible form of injury, this Court has noted that "if testing yields exculpatory results, [the Plaintiff's] conviction would stand unless successfully challenged in a separate action, brought at a future date, alleging a different constitutional violation altogether." Wade, 460 F. Supp. 2d at 236-39. "As such, there is nothing about plaintiff's action that could ever 'necessarily imply' the invalidity of the earlier conviction. . . . [P]laintiff's action . . . does not necessarily imply much of anything," it has found. Id. This Court has further concluded that "the connection between [the Plaintiff's] request and any possible release is even more

_____

a result of a lack of causation of injury.

attenuated [than that in <u>Wilkinson v. Dotson</u>, 544 U.S. 74 (2005)]."  <u>Id.</u>  As above, if the causal

connection between the Plaintiff's accessing the DNA evidence through this action and his

confinement is highly "attenuated," <u>id.</u>, then the causal connection between his failure to receive

it before now and his confinement must be found no less "attenuated" for standing purposes,

<u>Donahue</u>, 304 F.3d at 115.  That is, the Plaintiff cannot demonstrate that his lack of access has

brought about his confinement and that he otherwise would not be confined.  Very similarly, he

cannot "show that it is likely – rather than merely speculative – that 'the injury [of being

confined] will be redressed by a favorable decision.'"  <u>Donahue</u>, 304 F.3d at 115 (quoting <u>Lujan</u>,

504 U.S. at 560-61); <u>cf.</u> <u>Heck</u>, 512 U.S. at 487 (stating that "actual, compensable injury" that

must be proven to recover damages under § 1983 "does *not* encompass the 'injury' of being

convicted and imprisoned (until [the plaintiff's] conviction has been overturned)").

    In short, assuming this Court's <u>Heck</u> analysis is correct, then this action is one step

removed from one that, for example, arises from the denial of certain <u>Brady</u>[4] evidence, the use of

which may or may not have been enough to secure an acquittal.  Here, it is not even known

whether the evidence at issue is potentially material and exculpatory, or what it actually entails.

The Plaintiff stands on the same footing as one who brings an action alleging injury as a result of

a prosecutor's failure to turn over a sealed envelope, the contents of which are not known to

anyone.  His suit must thus be viewed as constituting no more than a request for discovery that,

depending upon its contents, may or may not help him bring a separate action.  (Pl.'s Mem. 30

(stating that the Plaintiff "simply wishes to use the DNA testing to further develop his actual

innocence claim," which is "not yet fully developed").)  That is different than a true action for

redress of injury in fact caused by the Defendants.  The reality is that, even if he requires that

---

[4] <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

discovery in order to establish an injury in fact and bring the other action, his need for discovery

is not itself enough to confer jurisdiction on this Court to award it.  See Lewis, 518 U.S. at 360

n.7.

It must thus be concluded that the Plaintiff cannot satisfy his burden of establishing

standing to prosecute this § 1983 action.  See Penley v. Sandoval, 2005 WL 3970822, at *4-5

(E.D. Tex. Mar. 8, 2005) (unpublished, adopted findings and conclusions of magistrate judge)

(concluding that plaintiff failed to "allege[] any more than conjectural personal injury relating to

his claims [and thus] ha[d] no constitutional standing" to prosecute § 1983 action based on

destruction of blood evidence that he claimed was potentially exculpatory and could have been

subjected to DNA testing that may have revealed that his conviction was unlawful), aff'd sub

nom. Penley v. Collin County, 446 F.3d 572 (5th Cir. 2006).  Instead of awarding him judgment,

this Court must dismiss his action and enter judgment for the Defendants.  See Fed. R. Civ. P.

12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action.").

## III.    The Plaintiff's action is time-barred.[5]

The Plaintiff's action is time-barred, and none of the arguments that he has offered to the

contrary alter that reality.

### A.    This action is governed by the three-year limitation period provided for in M.G.L. c. 260, § 2A

The Plaintiff errs in challenging the Defendants' position that this action is governed by

the three-year statute of limitations applicable to personal injury actions under Massachusetts

law, M.G.L. c. 260, § 2A, and arguing that it is instead subject to no period of limitation.  (Pl.'s

Mem. 9-14.)  His contention fails for several reasons.  The first is that this Court has already

determined that M.G.L. c. 260, § 2A governs.  It explained as follows:

> Section 1983 does not contain a specific statute of limitations.  Instead, §
> 1983 claims "borrow[ ] the appropriate state law governing limitations
> unless [it is] contrary to federal law."  Liability under § 1983 is most akin
> to tort liability, so the applicable statute of limitations is the three year
> period Massachusetts law has established for personal injury actions.

Wade, 460 F. Supp. 2d at 233 (citations omitted) (quoting Vistamar, Inc. v. Fagundo-Fagundo,

430 F.3d 66, 69 (1st Cir. 2005)).  The second reason is that the determination above was entirely

correct.  It is well-settled that a court should borrow the forum state's general or residual statute

of limitations for personal injury actions in § 1983 cases.  See, e.g., Owens v. Okure, 488 U.S.

235, 249-50 (1989) (extending holding in Wilson v. Garcia, 471 U.S. 261, 266-80 (1985));

Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) ("Sections 1981,

1983, and 1985 borrow the forum state's statute of limitations for personal injury claims.").

Accordingly, M.G.L. c. 260, § 2A has been found applicable in "section 1983 cases arising in

Massachusetts."  Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (explaining that "a

federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum

state's limitation period governing personal injury causes of action" (citing Wilson, 471 U.S. at

276-80)); see also, e.g., Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991) ("Where a state has more

than one statute of limitations that applies to personal injury actions, a federal court should

borrow the state's general or residual personal injury statute of limitations.  In Massachusetts,

that statute is M.G.L. c. 260 § 2A." (citation omitted) (citing Owens, 488 U.S. at 249-50));

Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991) ("The limitation period applicable

---

[5] The arguments presented below are offered as alternatives in the event that this Court rejects
the arguments above.  Nothing contained below should be construed as a waiver or concession as
to any of the issues addressed above.

to a section 1983 claim is to be found in the general personal injury statute of the jurisdiction in which the claim arises.  In Massachusetts, [M.G.L. c. 260, § 2A] fixes a three-year limitation for the commencement of tort actions and, consequently, applies to section 1983 suits." (citations omitted) (citing, inter alia, Owens, 488 U.S. at 249-50, and Wilson, 471 U.S. at 276-79)).

The third reason for rejection of the Plaintiff's argument is that it is based on two invalid contentions.  One is that determining the applicable period of limitation requires reference to the federal Innocence Protection Act of 2004, P.L. No. 108-405, tit. IV, § 411(a)(1), 118 Stat. 2278-83 (effective Oct. 30, 2004) (the "IPA"), codified at 18 U.S.C. § 3600, which he asserts is without an express limitation period.  (Id. at 9-14.)  The other is that, because he seeks equitable relief, the timeliness of his action should not be assessed under any statute of limitations, but only under the doctrine of laches.  (Id. at 14-16.)  Each contention is addressed in turn.

**1.    The federal Innocence Protection Act does not render M.G.L. c. 260, § 2A inapplicable.**

The Plaintiff is incorrect in contending that this Court should finding no statute of limitations applicable here based on reference to the IPA.  Like his timeliness argument as a whole, this contention is invalid for multiple reasons.

First, the Plaintiff places undue emphasis on the statement of the First Circuit Court of Appeals that "a § 1983 claim, according to 42 U.S.C. § 1988, borrows the appropriate state law governing limitations unless contrary to federal law," Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003).  (Pl.'s Mem. 9-14.)  That statement reflects a general principle that has been significantly refined and  expounded upon by the Supreme Court.  Specifically, its decisions in Wilson and Owens were intended to resolve exactly which state law governing limitations should appropriately be borrowed.  The Wilson Court "sought to end th[e] 'conflict, confusion and uncertainty'" created by its prior direction that courts choose the most analogous and

appropriate state statute of limitations on a case-by-case basis in § 1983 actions.  Owens, 488

U.S. at 239-40 (quoting and discussing Wilson, 471 U.S. at 266-80).  It thus determined "that

one 'simple broad characterization' of all § 1983 actions was appropriate" and "held that a

State's personal injury statute of limitations should be applied to all § 1983 claims."  Id. at 240-

43 (quoting Wilson, 471 U.S. at 275); Wilson, 471 U.S. at 275 ("We conclude that 42 U.S.C. §

1988 is fairly construed as a directive to select, in each State, the one most appropriate statute of

limitations for all § 1983 claims.").  The Owens Court further refined that rule by "hold[ing] that

where state law provides multiple statutes of limitations for personal injury actions, courts

considering § 1983 claims should borrow the general or residual statute for personal injury

actions."  Id. at 249-50.  In doing so, it aimed "to provide courts with a rule for determining the

appropriate personal injury limitations statute that can be applied with ease and predictability in

all 50 States."  Id. at 243.  "Our decision in Wilson promised an end to the confusion over what

statute of limitations to apply to § 1983 actions; with today's decision, we hope to fulfill

Wilson's promise," the Owens Court concluded.  Id. at 251.

    While these legal propositions may not have been recited with clarity in Poy, they are

clearly reflected in decisions handed down by the First Circuit Court of Appeals since Poy.  See

Douglas v. York County, 433 F.3d 143, 144 (1st Cir. 2005) ("Since there is no federal statute of

limitations for federal civil rights actions, courts look to the state limitations period for personal

injury actions."); Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir.

2005) (stating that "a federal court adjudicating a section 1983 action must borrow the forum

state's general statute of limitations for personal injury actions" (citing Owens, 488 U.S. at 240-

41, and Nieves, 241 F.3d at 51)).  Moreover, even where the First Circuit Court of Appeals has

quoted the above language from Poy, it has also cited to cases reflecting the principles advanced

herein.  See Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007) (citing Centro Medico, 406 F.3d at 6, and Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998) ("In Wilson v. Garcia, the Supreme Court determined that the state statute of limitations applicable in tort actions for personal injuries governs § 1983 claims.")); Vistamar, 430 F.3d at 69-70 (same).  And as noted above, the First Circuit Court of Appeals has adhered to the directives in Wilson and Owens and affirmed on multiple occasions that § 1983 actions arising in Massachusetts are governed by M.G.L. c 260, § 2A.  See, e.g., Nieves, 241 F.3d at 51; Street, 936 F.2d at 39; Gilbert, 932 F.2d at 57.

Thus, the Plaintiff's argument ignores the fact that a determination as to the appropriate limitation period to be applied in all § 1983 actions in Massachusetts has been made.  His argument also runs counter to the goals of the decisions giving rise to that determination – ending "'conflict, confusion and uncertainty'" and providing for the easy and predictable selection of a single period that is applicable to all § 1983 actions within a given state, regardless of the nature of their allegations.  Owens, 488 U.S. at 239-51 (quoting Wilson, 471 U.S. at 266-80); Wilson, 47 U.S. at 268-79.

Second, even if this Court could scour the United States Code for direction in determining the applicable limitation period, it would be inappropriate for it to look to the IPA, because that statute does not create or even concern any civil cause of action.  18 U.S.C. § 3600. Rather, it relates to the filing and disposition of a particular type of motion in connection with a federal criminal case.  Id.  Surely, the case law concerning the "borrowing" of limitation periods in civil actions under § 1983 cannot be read as suggesting that courts should look to statutes that have nothing to do with civil claims at all.  See, e.g., Owens, 488 U.S. at 239-51; Wilson, 47 U.S. at 268-79.

Third, the Plaintiff's contention is foreclosed by the express terms of the IPA itself.  That statute provides that "[n]othing in this section shall affect the circumstances under which a person may obtain DNA testing or post-conviction relief under any other law."  18 U.S.C. § 3600.  Thus, there is no merit to the Plaintiff's assertions that respect for the determinations of Congress mandates reference to the IPA in assessing the extent to which relief is available under § 1983.  (Pl.'s Mem. 9-14.)

Fourth, the Plaintiff is incorrect in stating that "Congress refused to incorporate a statute of limitations into the IPA" and "felt [the] interest [in post-conviction DNA testing] could only be advanced by *not* placing time restrictions on DNA testing requests."  (Pl.'s Mem. 11-13.) Rather, Congress put in place a set of timeliness standards that generally provides for a three-year limitation period for those convicted more than two years after the IPA's enactment, which period is subject to extension in certain exceptional situations.  18 U.S.C. § 3600(a)(10). Specifically, it legislated as follows:

> [A motion may be allowed if the court finds, in addition to the other statutory criteria, that it] is made in a timely fashion, subject to the following conditions:
> > (A) There shall be a rebuttable presumption of timeliness if the motion is made within 60 months of enactment of the Justice For All Act of 2004 or *within 36 months of conviction*, whichever comes later. Such presumption may be rebutted upon a showing--
> > > (i) that the applicant's motion for a DNA test is based solely upon information used in a previously denied motion; or
> > > (ii) of clear and convincing evidence that the applicant's filing is done solely to cause delay or harass.
> > (B) There shall be a rebuttable presumption against timeliness for any motion not satisfying subparagraph (A) above. Such presumption may be rebutted upon the court's finding--
> > > (i) that the applicant was or is incompetent and such incompetence substantially contributed to the delay in the applicant's motion for a DNA test;
> > > (ii) the evidence to be tested is newly discovered DNA evidence;

14

> (iii) that the applicant's motion is not based solely upon the
> applicant's own assertion of innocence and, after
> considering all relevant facts and circumstances
> surrounding the motion, a denial would result in a manifest
> injustice; or
> (iv) upon good cause shown.
> (C) For purposes of this paragraph--
> (i) the term "incompetence" has the meaning as defined in
> section 4241 of title 18, United States Code;
> (ii) the term "manifest" means that which is unmistakable,
> clear, plain, or indisputable and requires that the opposite
> conclusion be clearly evident.

18 U.S.C. § 3600(a)(10) (emphasis added).  Thus, the Plaintiff's claim that the will of Congress

calls for DNA testing to be allowed without regard to the timing of one's request is belied by the

IPA's plain language.  (Pl.'s Mem. 11-13.)

Fifth, the Plaintiff's contention regarding the relevance of the IPA is otherwise based on

non-authoritative sources.  In particular, he cites case law and principles that predate and are

superseded by Wilson and Owens – a fact that he appears to concede in one place.  (Pl.'s Mem.

9-14 & nn. 5, 7 (referring in part to where "federal courts used to look").)  Added to this are

citations to cases in which courts took into account federal interests as to matters unrelated to

limitation periods.  (Id. 12 n.8.)  These citations are further accompanied by references to the

statements and reports of Executive Branch officials.  (Pl.'s Mem. 12-13.)  Such pronouncements

do not constitute and certainly do not trump federal law.  See U.S. Const. art. I, §§ 1, 7, 8

(assigning legislative powers to Congress, and setting forth procedures for enactment of federal

laws and extent of presidential involvement).  Moreover, even the Plaintiff does not suggest that

any of them related directly to the issue of limitations periods in § 1983 actions such as his.

(Pl.'s Mem. 12-13.)

The Plaintiff has offered no reason to conclude that application of M.G.L. c. 260, § 2A is

contrary to federal law in any respect.

2.  **The fact that the Plaintiff seeks equitable relief does not place his action outside the scope of statutes of limitations.**

There is no more validity to the Plaintiff's contention that, because he seeks equitable relief, his action is not governed by any statute of limitations, but only by the doctrine of laches. (Pl.'s Mem. 14-19.)  His error is in relying on the rule that "'where equity jurisdiction is exclusive and is not exercised in aid or support of a legal right, state statutes of limitations barring actions at law are inapplicable,'" instead of its corollary that "when the jurisdiction of the federal court is concurrent with that of law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations," Russell v. Todd, 309 U.S. 280, 289 (1940); see also Cope v. Anderson, 331 U.S. 461, 463-64 (1947) ("[E]quity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy.").  (Pl.'s Mem. 14 (quoting first statement from Russell).) Focusing on the nature of the cause of action, courts have recognized that a § 1983 action is in support of a legal right and equity jurisdiction is concurrent, not exclusive.  See, e.g., Clulow v. State of Okla., 700 F.2d 1291, 1302-03 (10th Cir. 1983) ("The crux of the matter in the instant case is that the civil rights claims are assertable as legal rights, enforceable in actions at law as well as in equity; hence equity's jurisdiction is concurrent, not exclusive."), overruled on other grounds by Garcia v. Wilson, 731 F.2d 640 (10th Cir. 1984), and Newcomb v. Ingle, 827 F.2d 675 (10th Cir. 1987); see also Gilbert, 932 F.2d at 58 (parenthetically quoting statement from Clulow regarding concurrent nature of jurisdiction in civil rights actions).  Accordingly, they have concluded that § 1983 actions seeking equitable relief are barred where the statute of limitations would bar a corresponding action for damages.  Gilbert, 932 F.2d at 57-58 (rejecting argument that statute of limitations does not apply to civil rights action seeking declaratory judgment); Clulow, 700 F.2d at 1303 (stating that "since the plaintiff could have sought relief at

law, the statute of limitations period is observed in equity," and "we feel that equitable relief should be withheld since the corresponding legal relief would be barred."); 3 Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation:  The Law of Section 1983 § 9:36, at 9-100 (4th ed. 2007) (footnote omitted) ("[W]here the applicable limitations period has run, then irrespective of laches, the § 1983 injunctive relief action will be time-barred.").[6]

The Plaintiff also errs in suggesting that actions for equitable relief are not governed by statutes of limitations under Massachusetts law.  (Pl.'s Mem. 14.)  It is beyond doubt that M.G.L. c. 260, § 2A applies to both legal and equitable actions.  See, e.g., Baldassari v. Public Fin. Trust, 369 Mass. 33, 43, 337 N.E.2d 701, 708 (1975) (stating that M.G.L. c. 260, § 2A "applies in equity as well as at law"); see also Tracerlab, Inc. v. Industrial Nucleonics Corp., 204 F. Supp. 101, 102 n.1 (D. Mass. 1962) (Ford, J.) (stating that M.G.L. c. 260, § 2A "applies in equity as well as at law"), rev'd on other grounds, 313 F.2d 97 (1st Cir. 1963).

Nothing in the two Massachusetts cases cited by the Plaintiff indicates otherwise.  (Pl.'s Mem. 14.)  Indeed, neither case discussed the statute of limitations for personal injury actions. See New Eng. Trust Co. v. Spaulding, 310 Mass. 424, 429-31, 38 N.E.2d 672, 676 (1942); Robinson v. Callahan, 2001 WL 772730 (Mass. Super. Ct. 2001) (Hely, J.).  New England Trust concerned the statute of limitations governing actions against the executors or administrators of a decedent's estate.  310 Mass. at 429-31, 38 N.E.2d at 676.  It stated the limited proposition that the statute "does not apply to suits to enforce equitable interests in property of a decedent in the

---

[6] Application of these principles is not restricted to cases where both damages and equitable relief are sought.  See Gilbert, 932 F.2d at 57-58 (applying principle in action seeking only declaratory relief).  It is also not limited to situations where granting the requested equitable relief would necessarily give rise to some type of monetary award.  See Clulow, 700 F.2d at 1302-03 (applying principle to claims requesting declaratory judgments that the plaintiff's involuntary commitment was unlawful and that certain procedures must be undertaken in ordering such commitments).

possession of an executor, as such a suit is not only by a creditor to collect a debt but one by the holder of an equity to enforce his title." Id. Robinson, an unpublished Superior Court decision (which the Plaintiff mistakenly cites as "Robison v. Rose"), involved the statute of limitations governing actions against an estate's beneficiaries. 2001 WL 772730. The court there noted that "[t]he plaintiff seeks to avoid the statute of limitations by arguing that his claim seeks equitable relief in the form of specific performance and that this qualifies as an equitable relief exception to the statute of limitations." Id. at *3. While it followed this statement with a citation to New England Trust, it ultimately found the plaintiff's argument unsustainable without ever commenting on whether "[t]he alleged equitable relief exception" would ever apply. Id. It follows that neither federal law nor state law supports the notion that M.G.L. c. 260, § 2A does not govern this action.

Even if this Court were to conduct a laches analysis here, it would have to find the action barred. Contrary to the Plaintiff's contention (Pl.'s Mem. 15), he would bear the burden of proof as to that issue, given that, as established below, his suit was commenced after the period provided for under M.G.L. c. 260, § 2A. See Gilbert v. City of Cambridge, 745 F. Supp. 42, 46 n.4 (D. Mass. 1990) (Woodlock, J.), aff'd, 932 F.2d 51 (1st Cir. 1991) ("[I]f laches were the relevant standard, the plaintiffs would bear the burden of overturning the presumption that laches applies by showing that their delay in bringing suit was not unreasonable and that there had been no prejudice to the defendant."); cf. Puerto Rican-American Ins. Co. v. Benjamin Shipping Co., 829 F.2d 281, 283 (1st Cir. 1987) (explaining that, in admiralty context, "if a plaintiff files a complaint within the analogous statutory period, the burden of proving unreasonable delay and prejudice [for laches to apply] falls on the defendant. If a plaintiff files after the statutory period has expired, the burden shifts and a presumption of laches is created." (citation omitted).) In

support of his claim that the burden of establishing laches falls on the Defendants, the Plaintiff cites K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir. 1989).  However, the relevant statement in K-Mart was qualified in a manner consistent with the discussion above. There the court stated that "*[w]hen a plaintiff brings suit within the limitation period*, a defendant claiming laches has the burden of proving both unreasonableness of the delay and the occurrence of prejudice."  Id.

Here, the Plaintiff cannot show that his delay was not unreasonable and that there has been no prejudice to the Defendants.  See Gilbert, 745 F. Supp. at 46 n.4.  As this Court has recognized, the SJC began allowing the admission of certain DNA evidence one week before the Plaintiff's trial.  Wade, 460 F. Supp. 2d at 234 (citing Commonwealth v. Rosier, 425 Mass. 807, 685 N.E.2d 739 (1997), and Commonwealth v. Sok, 425 Mass. 787, 683 N.E.2d 671 (1997), abrogated by In re Canavan, 432 Mass. 304, 733 N.E.2d 1042 (2000)).  According to the Plaintiff's allegations, since that time, he and his counsel have not received access to such evidence.  (Pl.'s Mem. passim.)  As discussed above, there are three possible "injuries" that the Plaintiff could be viewed as alleging as a result of such lack of access:  simply not receiving the evidence; not being able to meaningfully access the courts; and being confined.[7]  Regardless of which one is considered, the injury became known very close in time to his conviction.  His position in this case is essentially that he is an innocent man languishing in prison without the ability to access evidence that, under the right circumstances, he might be able to use in a challenge to his conviction.  Given all of that, he cannot demonstrate that it was reasonable for

---

[7] In moving for summary judgment, the Plaintiff claims that "[f]or § 1983 purposes, the actual 'injury' suffered by [him] is the Commonwealth's refusal to provide him access to the potentially exculpatory physical evidence . . . ."  (Pl.'s Mem. 21.)  For the reasons discussed above, that mere refusal would not constitute legal "injury."  However, even if it did, such injury would have occurred and been known to the Plaintiff more than three years before the filing of his action.

him not to have sought such access in state court prior to 2002 and in federal court prior to this

action.  <u>Wade</u>, 460 F. Supp. 2d at 232-33.

The Plaintiff's inability to show a lack of prejudice to the Defendants is established

below in connection with the appropriate standard to be applied.  Taking that discussion into

account, the conclusion must be reached that the Plaintiff would not prevail under a laches

analysis.[8]

### B.    <u>The continuing violation doctrine does not apply here.</u>

The Plaintiff is next mistaken about the applicability of the continuing violation doctrine.

(Pl.'s Mem. 16-19.)  As he correctly notes, the doctrine may be invoked by a plaintiff in certain

cases arising from "serial" or "systemic" violations.  <u>Muniz-Cabrero v. Ruiz</u>, 23 F.3d 607, 610

(1st Cir. 1994).  However, the doctrine is more commonly applied in employment discrimination

cases and has been given only limited application outside that context in this circuit.  <u>See</u> <u>Batiste</u>

<u>v. City of Boston</u>, 23 F.3d 394, 1994 WL 164568, at *2 (1st Cir. 1994) (unpublished) (describing

doctrine as "an equitable principle most often invoked in the Title VII [of the Civil Rights Act of

1964] context").

Moreover, this circuit's Court of Appeals has made clear that the doctrine does not

extend to a § 1983 claim predicated on a single decision, such as the defendant's denial of relief

requested by the plaintiff, simply because it has not been reversed or has lasting effects.  Its

determinations to that effect have been grounded in several principles of law.  First, the court has

---

[8] In fact, this action could be found barred under the doctrine of laches, even if this Court finds
that it is governed by the statute of limitations and was brought within the period provided for
therein.  As established above, the doctrine of laches cannot replace the statute of limitations or
save an action barred by such a statute.  However, it can operate in addition to a statute of
limitations and thus bar an action even before the limitation period has expired.  <u>See</u> 3 Nahmod,
<u>supra</u>, § 9:36, at 9-100 (explaining that "even though the applicable limitations period has not
run, laches can still bar a plaintiff's § 1983 injunctive relief action").

maintained that a single act having lasting effects cannot be equated with a "serial violation" consisting of a set of separate acts. See Gilbert, 932 F.2d at 58-59 (rejecting argument that denial of permit applications constituted a continuing violation of plaintiffs' rights, noting that denial "comprised a discrete event," as opposed to "the kind of ongoing acts needed to foster tolling," and that "'courts must be careful to differentiate between discriminatory acts and the ongoing injuries which are the natural, if bitter, fruit of such acts'" (quoting Jensen v. Frank, 912 F.2d 517, 523 (1st Cir.1990))); De Leon Otero v. Rubero, 820 F.2d 18, 19-20 (1st Cir. 1987) (concluding that defendants' demotion of plaintiff and repeated refusals to reinstate him do not constitute a continuing violation, as "[a] continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination" (quoting Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1018 (1st Cir.1979))); Altair Corp. v. Pesquera de Busquets, 769 F.2d 30, 32-33 (1st Cir. 1985) (rejecting argument that official's change to interest rates constituted a continuing violation of the plaintiff's civil rights, noting that "[t]he statute of limitations begins to run upon the invasion of plaintiff's interest" and the plaintiff "confuses a continuing act with a single act that has continuing consequences"), abrogated in non-relevant part by Carreras-Rosa v. Alves-Cruz, 127 F.3d 172 (1st Cir. 1997); Muniz-Cabrero, 23 F.3d at 610-11 (noting that "[s]erial violations are 'composed of a number of discriminatory acts . . . each constituting a separate [actionable] wrong'" and "[i]t is not enough to show that plaintiff is merely feeling the effects of some earlier discriminatory action," and rejecting argument that "because the original reorganization [of plaintiff's department, which plaintiff alleged led to discrimination against him,] was illegal, any fallout from [it] constituted an independent act of demotion," as "any demoted employee with a potential cause of action could wait an indefinite period of time before bringing a § 1983 action

because every day s/he went to work, s/he was affected" (second alteration in original) (quoting

Jensen, 912 F.2d at 522)); Batiste, 1994 WL 164568, at *2 (rejecting argument that plaintiff's

alleged "wrongful conviction and incarceration constituted a continuing wrong which persisted

through the end of his probation," noting "'the 'critical distinction' between a continuing act and

a singular act that brings continuing consequences' for purposes of the limitations period"

(quoting Gilbert, 932 F.2d at 58-59)); Connell v. Board of Selectmen, 215 F.3d 1311, 2000 WL

739719, at *2-3 (1st Cir. 2000) (unpublished) (explaining that "'[a] serial violation occurs where

a chain of similar discriminatory acts emanating from the same discriminatory animus exists and

where there has been some violation within the statute of limitations period that anchors the

earlier claims" and "residual effects of past discriminatory conduct . . . are not themselves acts of

discrimination and therefore will not satisfy the anchor violation requirement, '" and concluding,

where plaintiffs alleged that defendants "engaged in a series of wrongful acts, in an effort to

disrupt and damage the [plaintiffs'] business, including denying them licenses and permits which

were necessary for them to operate," that state court's ultimate denial of relief "was not an overt

act of the defendants and cannot be used as an 'anchor' to bind the earlier claims" (quoting

Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 14 (1st Cir.1998), abrogation

in non-relevant part recognized by Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405-06 (1st Cir.

2002))).  In fact, as the court has noted, "[i]t has been specifically held that, where an individual

alleges to have been wrongfully incarcerated because of false arrest or some other tortious

activity, such incarceration constitutes a continuing ill effect from the earlier misconduct rather

than a continuing tort in and of itself."  Batiste, 1994 WL 164568, at *2 (citing cases).[9]

---

[9] Some of these cases discussed the principle referenced above using only the broader term
"continuing violation" and not the narrower term "serial violation," but were clearly analyzing

Second, the Court of Appeals has rejected the notion that such a situation constitutes a "systemic violation," as to which it "must be shown . . . that plaintiff has been harmed by the application of a discriminatory policy or practice and that such policy continues into the limitations period." Muniz-Cabrero, 23 F.3d at 611 (rejecting claim of systemic violation where the plaintiff "alleged that every time [defendant] carried out her position as supervisor, she resurrected a general political plot designed by defendants to harm and humiliate plaintiff," but "failed to identify any discriminatory policy or practice in effect during the statutory period"); Connell, 2000 WL 739719, at *2 (explaining that "[a] systemic violation 'refers to general practices and policies' and 'has its roots in a discriminatory policy or practice,'" and concluding that "there [was] no sufficient allegation of a systemic violation," as the plaintiffs failed "to link any such alleged discrimination to a policy and practice attributable to the defendants" (quoting, without internal quotation marks, Provencher, 145 F.3d at 14)).

Third, the court has reasoned that a violation should not be treated as "continuing" after the plaintiff becomes aware of it. See Connell, 2000 WL 739719, at *3 (indicating that "[i]n all events, a continuing violation – whether systemic or serial – will fail '[e]ven where a plaintiff alleges a violation within the appropriate statute of limitations period, . . . if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place,'" as in the case before the court (quoting Provencher, 145 F.3d at 14)).

The result is the same under state law. In Massachusetts, as in the federal court, the continuing violation doctrine is generally associated with employment discrimination. See Ocean Spray Cranberries v. Massachusetts Comm'n Against Discrimination, 441 Mass. 632,

---

whether the violation was of the serial type. See Gilbert, 932 F.2d at 58-59; De Leon Otero, 820

641-47, 808 N.E.2d 257, 265-70 (2004) (applying statute and regulations dealing with employment discrimination).  Moreover, the SJC has rejected the notion that, after a defendant employer's initial refusal to provide accommodation or to participate in the accommodation process, the "employer would be deemed to have committed a new act of discrimination against the employee every day thereafter (thereby restarting the limitations clock) until it reversed its position and, ultimately, provided the accommodation."  Id.

The SJC's decision in Ocean Spray Cranberries reflected all three of the aforementioned rationales offered by the First Circuit Court of Appeals.  First, the court reasoned that "[w]hen an employer refuses an employee's request for a reasonable accommodation, the refusal is a discrete discriminatory act triggering the statutory limitations period."  Id. at 644-46, 808 N.E.2d at 267-68 (adding that "when an employer responds to a request for a reasonable accommodation with equivocal action or inaction, the limitations period in [the relevant statute] begins to run at the point thereafter when the employee knew or reasonably should have been aware that the employer was unlikely to afford him a reasonable accommodation").  "Looked at from another perspective, if [such an] 'each day' theory is a viable way of identifying continuing acts of discrimination, nothing in principle distinguishes any discrete act of discrimination from a continuing violation. . . .  This would eviscerate the purpose of a statutory limitations period, and permit what should be a limited exception to such a stricture to swallow it whole," the court explained.  Id. at 644-45, 808 N.E.2d at 268.

Second, the SJC noted that "this is not a systemic violation case, because there has been no allegation that [the defendant employer] had a policy or practice of denying employees accommodation."  Id. at 642 n.14, 808 N.E.2d at 266 n.14.  Third, the court found its conclusion

---

F.2d at 19-20; Altair Corp., 769 F.2d at 32-33; Batiste, 1994 WL 164568, at *2.

justified by the rule that "for the continuing violation doctrine to apply, a complainant must ordinarily prove[, inter alia, that] . . . earlier violations outside the six-month limitations period did not trigger [the plaintiff's] 'awareness and duty' to assert his rights, i.e., that [the plaintiff] could not have formed a reasonable belief at the time the employment actions occurred that they were discriminatory.'" Id. at 642-43, 808 N.E.2d at 266-67 (footnote omitted) (quoting order of commission whose decision was under review).

The principles above compel the conclusion that application of the continuing violation doctrine under either federal or state law would be inappropriate here. The Plaintiff's action is predicated on a single alleged decision not to allow access to the DNA evidence. Any failure by the Defendants to reverse that decision represents a continuation of the effects of that decision, not a recurring series of new violations. Further, such a decision not to release that particular evidence in his case also cannot be equated with a general policy or practice. Added to the above, the Plaintiff had to know of the alleged violation and any "injury" as soon as it occurred. As discussed above, the SJC began allowing the admission of certain DNA evidence one week before the Plaintiff's trial, Wade, 460 F. Supp. 2d at 234; the Plaintiff maintains that, since that time, he and his counsel have not received access to such evidence; and any of the possible injuries he suffered became known to him close in time to his conviction. There is no justification in the law or logic for ignoring such facts and adopting the fiction that he became aware of a new violation with each passing day. As the SJC astutely observed, any conclusion to the contrary would seemingly allow virtually any violation to be deemed "continuing" and would

lead to evisceration of statutes of limitations.  Ocean Spray Cranberries, 441 Mass. at 644-45,

808 N.E.2d at 268.[10]

C.    **No tolling is available to the Plaintiff.**

The Plaintiff is next incorrect in maintaining that he may benefit from tolling of the

limitation period.  Tolling in a § 1983 action is governed by state law.  E.g., Wilson, 471 U.S. at

269.  Here, the Plaintiff claims that tolling is available under both M.G.L. c. 260, § 7 and

equitable tolling principles.  (Pl.'s Mem. 22-29.)  The burden of proof on this issue is his, in light

of the principle of Massachusetts law that "[i]f a defendant pleads the statute of limitations and

demonstrates that the action was commenced more than three years after the date of the

plaintiff's injury, the plaintiff has the burden of proving that the facts take the case outside of the

statute of limitations."  Williams v. Ely, 423 Mass. 467, 474, 668 N.E.2d 799, 804 (1996).  This

is yet another burden that he cannot meet.

Chapter 260, Section 7 of the Massachusetts General Laws provides in relevant part that

"[i]f the person entitled thereto is . . . incapacitated by reason of mental illness when a right to

bring an action first accrues, the action may be commenced within the time hereinbefore limited

---

[10] The Plaintiff also errs in urging this Court to consider the importance of the right at issue in
evaluating the "continuing violation" question.  (Pl.'s Mem. 18-19.)  His argument ignores the
important governmental interests in enforcing statutes of limitations, as discussed below.
Furthermore, the importance of the right invoked by him is a separate matter from whether there
was a "continuing violation" and whether the period of limitation expired before the
commencement of the Plaintiff's action.  When legislative bodies enact statutes of limitations,
they contemplate that some attempts to vindicate rights – even meritorious ones – will be
foreclosed.  However, they have made reasoned judgments to give precedence to other interests.
If plaintiffs could defeat statutes of limitations simply by arguing that their cases raise important
matters, then such statutes would be rendered meaningless.  Cf. Harris v. Hutchinson, 209 F.3d
325, 330 (4th Cir. 2000) (stating, with respect to use of equitable tolling in habeas corpus
context, that "any invocation of equity to relieve the strict application of a statute of limitations
must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules
of clearly drafted statutes.  To apply equity generously would loose the rule of law to whims

after the disability is removed."  Here, the Plaintiff's substantiation for his claim of incapacity is not at all adequate.  In moving for summary judgment, he urges in a conclusory manner that "his mental deficits, illiteracy, and borderline mental retardation mandate that the statute of limitations be tolled . . . ."  (Pl.'s Mem. 23.)  He then supports his claim merely by noting that he "pled sufficient facts in his post-trial and post-conviction pleadings, his federal habeas pleadings, and his § 1983 pleadings to demonstrate that his mental deficits prevented him from understanding when his rights to post-conviction DNA testing became cognizable."  (Id. 24.) His assertions are accompanied by no citations to specific parts of the record.  (Id.)  The Plaintiff is no longer at the motion to dismiss stage, where all his well-pled allegations are taken as true, Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  Rather, he is seeking summary judgment on an issue as to which he has the burden of proof.  Surely, he cannot prevail based merely on his own allegations.

The Plaintiff is no more entitled to equitable tolling.  The Massachusetts Supreme Judicial Court has explained that, under the Commonwealth's law, "the doctrine of equitable tolling is applicable only where the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit.  A party attempting to invoke that doctrine will be held to a duty of reasonable inquiry."  Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631, 682 N.E.2d 624, 635 (1997) (citation omitted); see also Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998) ("Under Massachusetts law the doctrine of equitable tolling suspends a running statute of limitations if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit.").  Thus, "[a] party seeking to toll the statute must at the very least show that the information could not have been found by a timely diligent

about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions

inquiry." <u>Bernier</u>, 144 F.3d at 180.  The SJC has also stated that the doctrine "is used 'only

sparingly,' and is generally limited to specified exceptions."  <u>Shafnacker v. Raymond James &</u>

<u>Assocs., Inc.</u>, 425 Mass. 724, 728, 683 N.E.2d 662, 665-66 (1997) (citation omitted) (quoting

<u>Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89, 96 (1990)).  One recognized example is in

instances of "'excusable ignoran[ce]' <u>id.</u> (alteration in original) (quoting <u>Andrews v. Arkwright</u>

<u>Mut. Ins. Co</u>., 423 Mass. 1021, 1022, 673 N.E.2d 40, 41 (1996)).  Such instances are those "in

which the plaintiff is excusably ignorant about the . . . statutory filing period." <u>Andrews</u>, 423

Mass. at 1022, 673 N.E.2d at 41-42.  In <u>Andrews</u>, excusable ignorance was not found where

"[t]he plaintiff was represented by counsel two months before the statutory filing deadline," as

"'[c]onstructive knowledge of all procedural requirements is imputed to a plaintiff who retains

an attorney.'" <u>Id.</u> (quoting <u>Mercado-Garcia v. Ponce Fed. Bank</u>, 979 F.2d 890, 896 (1st Cir.

1992)).  Other recognized examples include instances "where defendant 'affirmatively misled'

plaintiff," and "where plaintiff 'has actively pursued his judicial remedies by filing a defective

pleading during the statutory period.'" <u>Shafnacker</u>, 425 Mass. at 728, 683 N.E.2d at 665-66

(first alteration in original) (quoting <u>Andrews</u>, 423 Mass. at 1022, 673 N.E.2d at 41-42, in the

first instance, and <u>Irwin</u>, 498 U.S. at 96, in the second instance).

 Based on the foregoing, equitable tolling must not be found warranted here.  It cannot be

said that the Plaintiff "did not have, and could not have had with due diligence, the information

essential to bringing suit" beginning around the time of his conviction. <u>Protective Life Ins.</u>, 425

Mass. at 631, 682 N.E.2d at 635.  As discussed above, the SJC began allowing the admission of

certain DNA evidence shortly before that point, <u>Wade</u>, 460 F. Supp. 2d at 234; the Plaintiff

maintains that, since that time, he and his counsel have not received access to such evidence; and

---

of fair accommodation.").

any form of "injury" became known to him close to that point. The Plaintiff also cannot demonstrate that he was excusably ignorant concerning the statute of limitations, especially given that he had counsel, see Wade, 460 F. Supp. 2d at 232-33. See Andrews, 423 Mass. at 1022, 673 N.E.2d at 41-42. Finally, there has been no suggestion that any of the Defendants affirmatively misled the Plaintiff or that he filed a defective pleading within the limitation period. See Shafnacker, 425 Mass. at 728, 683 N.E.2d at 665-66. Accordingly, there are no grounds for equitable tolling. See Bernier, 144 F.3d at 180 (finding equitable tolling unwarranted by Massachusetts law in part because "the record does not suggest that the [relevant] document was in some way concealed or otherwise inaccessible to [the plaintiff during the limitation period]" and the plaintiff did not "offer any rationale for concluding that her attorney could not have discovered [the relevant information within the limitation period] as readily as he did [later]").

### D.   Any claim possessed by the Plaintiff accrued more than three years before his action was commenced and can no longer be maintained.

Taking into account the analysis offered above, this Court must conclude that any claim possessed by the Plaintiff accrued more than three years before his action was brought and can no longer be maintained. As this Court has recognized, accrual "starts when the plaintiff 'knows, or has reason to know, of the injury on which the action is based.'" Wade, 460 F. Supp. 2d at 233 (quoting McIntosh v. Antonino, 71 F.3d 29, 33-34 (1st Cir.1995)). As discussed above, the SJC began allowing the admission of certain DNA evidence one week before the Plaintiff's trial, Wade, 460 F. Supp. 2d at 234; the Plaintiff maintains that, since that time, he and his counsel have not received access to such evidence; and regardless of the form of "injury" recognized, it became known to him more than three years before the commencement of this case.

The limitation period must not instead be found to have accrued upon the Defendants' denial or the Massachusetts courts' denial of the Plaintiff's request to access the evidence. The Plaintiff has offered no rationale as to why the date of accrual should be tied to a *denial of his request* for the evidence, as opposed to his *failure to receive* the evidence. Indeed, such a choice would only seem warranted if the right to DNA testing does not attach until it is requested. That proposition, in turn, seems inconsistent with this Court's reasoning in recognizing the right. See Wade, 460 F. Supp. 2d at 243-52 (finding entitlement to access based on rights to due process and access to courts, reasoning in part that it is warranted by same motivations undergirding Brady, and noting that Brady's progeny calls for government to provide certain evidence without request and to allow defense experts to access biological evidence).

Basing accrual on the actions of the state courts would be inappropriate for at least two additional reasons. The first is that there is no basis for looking past the district attorney's alleged denial of access when the Plaintiff first requested it and viewing only the courts' denials as actionable. The Plaintiff has offered none. (Pl.'s Mem. 21 (stating, with case citations but no reasoning, that "[f]or § 1983 purposes, the actual 'injury' suffered by [the Plaintiff] is the Commonwealth's refusal to provide him access to the potentially exculpatory physical evidence - - this occurred on July 29, 2003, when the Superior Court denied his DNA testing motion")).) The second reason is that this action is against the Defendants based on their alleged failure to provide access to the DNA. (Pl.'s Am. Compl.) The Plaintiff has not sued the Massachusetts courts. (Id.) Nor could he. See, e.g., Papasan v. Allain, 478 U.S. 265, 276 (1986) ("'[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.' This bar exists whether the relief sought is legal or equitable." (alteration in original) (citation and footnote omitted) (quoting Pennhurst

State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984))).  In offering the date of the courts' failure to grant access as the date of accrual, the Plaintiff essentially attempts to treat certain state entities as defendants for purposes of avoiding immunity bars, while treating other state entities as defendants for purposes of avoiding statute-of-limitations bars.  Such an attempt should not be permitted.

 The date of accrual here should also not be linked to the point at which the Plaintiff should have become aware of the strength of the legal basis for his action.  It is well-established that "a plaintiff's ignorance of the existence of a legal right of action based on his injury does not operate to delay accrual of his claim."  Marrapese v. State of R.I., 749 F.2d 934, 943 (1st Cir. 1984) (citing Kubrick v. United States, 444 U.S. 111, 122 (1979) (stating that Court was "unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment.")); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir. 1992) (rejecting notion that accrual was delayed because the plaintiff "misapprehended the legal consequences of [the defendant's] actions," and parenthetically noting holding of Kubrick, 444 U.S. at 122, that "so long as the plaintiff is aware of 'the critical facts that he has been hurt and who has inflicted the injury,' the statute of limitations is triggered," and that Kubrick rule has been found to apply in § 1983 context).  "'[F]or a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury . . . [t]here are others who can tell him if he has been wronged, and he need only ask.'"  Marrapese, 749 F.2d at 943 (quoting Kubrick, 444 U.S. at 122).  This rule makes

sense. Just as the Plaintiff was able to secure this Court's recognition of a right to access DNA evidence now, he could have secured it sooner.[11]

Thus, with any reasonable accrual date being more than three years before the Plaintiff's action was commenced, the action must be found time-barred. See M.G.L. c. 260, § 2A.

IV.    **Any standard used to determine whether a due process violation has arisen and the Plaintiff may access the DNA evidence should be more stringent than that proposed by him and should be found to bar judgment in his favor.**

Should this Court reject the arguments above and proceed to assess when the right to access DNA evidence should be found to attach, and whether this Plaintiff should be allowed access, its assessment should be based on a standard more stringent than that which he offers. Herein the Defendants offer two factors that, taken in combination, warrant such a conclusion. They then suggest an alternate analytical framework for the Court to employ.

The first of the two factors referenced above is the uncertainty as to whether the testing will yield potentially exculpatory results. In its decision on the Defendants' motion to dismiss the Plaintiff's amended complaint, this Court raised questions about the standard to be applied in determining whether a due process violation arose. Wade, 460 F. Supp. 2d at 231 n.6, 248, 249. In doing so, the Court seemed inclined to favor a standard that would be based on the impact that an exclusionary result would have. Wade, 460 F. Supp. 2d at 231 n.6 ("In cases where an exclusionary test result would have no impact on the earlier verdict, plaintiff would not have a right to testing. Where an exclusionary test result would automatically exonerate a prisoner, the right is clearly implicated. The remaining issue is, 'at what point between those two poles does the due process interest become actionable?'"); id. at 248 (stating that "[n]one of these interests

---

[11] As to this issue, this Court might also consider the extent to which the right that it has recognized is in fact "a newly emergent right," Wade, 460 F. Supp. at 235, as opposed to an application of existing rights to a new set of facts.

[in finality] is adversely affected by allowing for DNA testing in cases where an exclusionary test result would reveal a fundamental defect in the trial verdict").  In response, the Plaintiff essentially suggests that a due process violation be found if an exclusionary result could raise serious doubts about the underlying verdict.  (Pl.'s Mem. 29-32.)  He insists that, as part of this analysis, "the Court must assume the DNA testing will produce exculpatory results."  (Id. 31.) The problem with the approach of the Court and Plaintiff, however, is that it fails to take into account the substantial uncertainty that such testing will in fact yield an exclusionary result and enable the Plaintiff to successfully challenge his conviction.  Even if this Court does not agree with the Defendants' argument on the issue of standing above, it must acknowledge, as it has previously, the degree of such uncertainty.

The second factor is the potential, adverse impact on public interests as a result of the testing.  Contrary to the Plaintiff's assertions, his request could place burdens on the Defendants and the Commonwealth and give rise to the kinds of problems that statutes of limitations were designed to avoid.  Specifically, such testing could very well yield a result that is less than clearly exculpatory but that is nevertheless used by the Plaintiff as the basis for a new set of attacks on his conviction.  In such an event, the Commonwealth could be forced to undertake considerable effort and expense in defending against such challenges or retrying the Plaintiff, where his challenges may in fact be meritless.  Moreover, those efforts by the Commonwealth could be encumbered if it is required to reintroduce evidence after memories have faded and witnesses and evidence have disappeared, a situation that statutes of limitations are designed to prevent.  See, e.g., Wilson, 471 U.S. at 271 (noting that "[j]ust determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost"); McCleskey v. Zant, 499 U.S. 467, 491 (1991) ("[W]hen a habeas petitioner succeeds in

obtaining a new trial, the 'erosion of memory and dispersion of witnesses that occur with the passage of time' prejudice the government and diminish the chances of reliable criminal adjudication." (quoting Kuhlmann v. Wilson, 477 U.S. 436, 453 (1986) (plurality opinion))), quoted in Wade, 460 F. Supp. 2d at 247. It would also detract from the Defendants' own interest in being able to move on without fear of having to answer for old actions. This too is a recognized purpose behind limitation periods in civil rights actions. Wilson, 471 U.S. at 271, 275 n.34 (stating, in discussing rationale for limitation periods, that "[i]n compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten," and that "[o]n a human level, uncertainty is costly to all parties. . . . Defendants cannot calculate their contingent liabilities, not knowing with confidence when their delicts lie in repose). And such a course of events would offend the interests of victims and the public in the finality of convictions, which interest has been recognized in various contexts. See, e.g., Fry v. Pliler, 127 S. Ct. 2321, 2325 (2007) (explaining that finality was a purpose behind less onerous standard on collateral review of state convictions); Duncan v. Walker, 533 U.S. 167, 179 (2001) (explaining that statute of limitations for habeas corpus actions challenging state convictions "serves the well-recognized interest in the finality of state court judgments").

Such impacts combined with the uncertainty discussed above militate in favor of demanding a higher showing from the Plaintiff before a due process violation is found and access to the DNA evidence is required. See Wade, 460 F. Supp. 2d at 246 ("In order to determine the appropriate scope of Due Process rights, the Court must consider, as it did in Brady, '(1) the nature of the private interest at stake, . . . (2) the value of the additional safeguard, and (3) the adverse impact of the requirement upon the Government's interests.'" (quoting United States v. Ruiz, 536 U.S. 622, 631 (2002))).

Mindful of the foregoing, the Defendants propose that this Court utilize a standard that involves consideration factors similar to those listed in the IPA. While the IPA clearly does not apply to the Plaintiff's case, the factors set forth therein are well thought out and sensible. 18 U.S.C. § 3600. In particular, the statute provides in part as follows:

Upon a written motion by an individual under a sentence of imprisonment or death pursuant to a conviction for a Federal offense (referred to in this section as the "applicant"), the court that entered the judgment of conviction shall order DNA testing of specific evidence if the court finds that all of the following apply:
   (1) The applicant asserts, under penalty of perjury, that the applicant is actually innocent of--
       (A) the Federal offense for which the applicant is under a sentence of imprisonment or death; or
       (B) another Federal or State offense, if--
           (i) evidence of such offense was admitted during a Federal death sentencing hearing and exoneration of such offense would entitle the applicant to a reduced sentence or new sentencing hearing; and
           (ii) in the case of a State offense--
               (I) the applicant demonstrates that there is no adequate remedy under State law to permit DNA testing of the specified evidence relating to the State offense; and
               (II) to the extent available, the applicant has exhausted all remedies available under State law for requesting DNA testing of specified evidence relating to the State offense.
   (2) The specific evidence to be tested was secured in relation to the investigation or prosecution of the Federal or State offense referenced in the applicant's assertion under paragraph (1).
   (3) The specific evidence to be tested--
       (A) was not previously subjected to DNA testing and the applicant did not--
           (i) knowingly and voluntarily waive the right to request DNA testing of that evidence in a court proceeding after the date of enactment of the Innocence Protection Act of 2004; or
           (ii) knowingly fail to request DNA testing of that evidence in a prior motion for postconviction DNA testing; or
       (B) was previously subjected to DNA testing and the applicant is requesting DNA testing using a new method or

technology that is substantially more probative than the prior DNA testing.

(4) The specific evidence to be tested is in the possession of the Government and has been subject to a chain of custody and retained under conditions sufficient to ensure that such evidence has not been substituted, contaminated, tampered with, replaced, or altered in any respect material to the proposed DNA testing.

(5) The proposed DNA testing is reasonable in scope, uses scientifically sound methods, and is consistent with accepted forensic practices.

(6) The applicant identifies a theory of defense that--

(A) is not inconsistent with an affirmative defense presented at trial; and

(B) would establish the actual innocence of the applicant of the Federal or State offense referenced in the applicant's assertion under paragraph (1).

(7) If the applicant was convicted following a trial, the identity of the perpetrator was at issue in the trial.

(8) The proposed DNA testing of the specific evidence may produce new material evidence that would--

(A) support the theory of defense referenced in paragraph (6); and

(B) raise a reasonable probability that the applicant did not commit the offense.

(9) The applicant certifies that the applicant will provide a DNA sample for purposes of comparison.

. . .

18 U.S.C. § 3600(a).[12]

Added to the above, this Court should call for some form of independent corroboration of

the Plaintiff's claim of actual innocence in the form of credible, admissible evidence.  Once the

assumption that the DNA testing will produce exclusionary results is removed in light of its

uncertainty, there becomes no sound rationale for the Plaintiff's insistence that "the strength of

the Commonwealth's case against [him] is irrelevant," and "any incriminating statements or

---

[12] The statute additionally contains provisions concerning the following:  notification to and response by the government; preservation of the evidence; appointment of counsel for the indigent; testing procedures; assessment of costs; deadlines for completing testing; reporting and recording test results; consequences of making false claims of innocence; standards for granting a new trial or resentencing; and timeliness of requests.  18 U.S.C. § 3600(a)-(g).

actions made or said by [him] or his trial counsel cannot be used to prohibit DNA testing."  (Pl.'s Mem. 30-31.)  Indeed, without such an assumption, it seems entirely fair to take into account the strength of other evidence against the Plaintiff, his own incriminating conduct or actions, his credibility, and the extent of trial and appellate proceedings involved in convicting him. Considering such factors, along with the adverse impacts on public interests discussed above, a requirement that he provide some support for his claim of innocence is reasonable.

        Applying standards of the type recommended herein compels the conclusion that judgment cannot be awarded in the Plaintiff's favor.  He has not established the kinds of criteria listed in the IPA.  (Pl.'s Mem. 29-42.)  Instead, he relies heavily on the assumption of an exclusionary result and conclusory statements about the impact that it would have.  (Id.) Particularly glaring is the Plaintiff's inability to satisfy the criteria listed in 18 U.S.C. § 3600(a)(6)-(8).  Given the conflict between his defense of consent at trial and his current suggestions that he did not engage in sexual activity with the victim, see Wade, 460 F. Supp. 2d at 226, he certainly has not "identifie[d] a theory of defense that . . . is not inconsistent with an affirmative defense presented at trial," claim that "the identity of the perpetrator was at issue in the trial," or claim that "DNA testing . . . would . . . support the theory of defense [at trial]."  18 U.S.C. § 3600(a)(6)-(8).

        The Plaintiff also fails to offer sufficient support for the notion that the information currently known tends to rule him out as at least *one* perpetrator of the offense.  (Id.)  See Wade, 460 F. Supp. 2d at 229 (stating that "blood and semen evidence . . . suggested that another individual may have been involved in the rape (either in addition to, or in lieu of, Wade)") Additionally, he makes no serious attempt at this stage to address the weight of other evidence against him or the Massachusetts Superior Court's finding that his innocence claim was not

credible, see Wade, 460 F. Supp. 2d at 241 (noting that "the presiding associate justice did not find [the Plaintiff's] affidavit, in which he claimed innocence, to be credible"). (Pl.'s Mem. 29-42.)  In fact, he states as follows:

> The analysis must be different at this juncture because [he] simply wishes to use DNA testing to further develop his actual innocence claim. Accordingly, because his actual innocence claim is not yet fully developed – no thanks to the Defendants – the Court may not, at this point, speculate as to whether his actual innocence claim is meritorious; only when DNA testing has been completed and the results reviewed by a court – this Court or a Commonwealth court – can such a determination be made.

(Id. 30.)  In other words, the Plaintiff appears to suggest that he would like to obtain the results of the DNA testing before explaining his theory of innocence.  That should be found unacceptable.  The Plaintiff is no longer a criminal defendant with the ability to place the burden on the Commonwealth and adjust his own strategy as evidence comes in.  Rather, he has the burden of a plaintiff in a civil action to show a violation, an injury, and a right to relief.  If he is in fact actually innocent, he should be able to articulate his theory of innocence even before the return of DNA testing and without fear of any conflict.  Considering all the above, the Plaintiff should not be found to have shown a right to testing.

Even if this Court concludes that a *right to testing* has been shown, in light of the factors above and the Defendants' discussion of the issue of standing, this Court should nevertheless find that he has not established injury and an entitlement to relief under § 1983.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment should be denied in its entirety, the Defendants' Cross-Motion for Summary Judgment should be allowed in its entirety, and judgment should be entered against the Plaintiff and in favor of the Defendants on all counts of the Plaintiff's complaint.

Respectfully submitted,

BERNARD F. BRADY,
TIMOTHY J. CRUZ, and
MARTHA COAKLEY,

by their counsel,

MARTHA COAKLEY
Attorney General


/s/ Randall E. Ravitz
Randall E. Ravitz (BBO # 643381)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200, ext. 2852

Dated:  April 24, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the Electronic Case Filing system will be

sent electronically to the registered participants as identified on the Notice of Electronic Filing

and paper copies will be sent to those indicated as non-registered participants on the date set

forth below.

Dated:  April 24, 2008                    /s/ Randall E. Ravitz
                                          Randall E. Ravitz